443 So.2d 522 (1983)
STATE of Louisiana
v.
Isaac SWEENEY.
No. 82-KA-1913.
Supreme Court of Louisiana.
November 28, 1983.
*525 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul J. Carmouche, Dist. Atty., Carey Schimpf, Asst. Dist. Atty., for plaintiff-appellee.
Glenn Langley, Shreveport, for defendant-appellant.
MARCUS, Justice.
Isaac Sweeney was charged by bill of information with possession with intent to distribute phenmetrazine in violation of La. R.S. 40:967(A). After a bench trial, defendant was found guilty as charged and sentenced to serve five years at hard labor with credit for time served. On appeal, defendant relies on ten assignments of error for reversal of his conviction and sentence.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in denying his motion to quash based on a denial of his right to a speedy trial as guaranteed by the federal and state constitutions.
*526 Defendant was arrested on April 27, 1981. At that time, he was out on bond after an arrest for forgery and receiving stolen goods. On July 24, defendant filed a motion in this case for a speedy trial. On September 8, defendant pled guilty in the other matter to a reduced charge of attempted theft under one hundred dollars and was sentenced to serve six months with credit for time served. Meanwhile, this case had been set for trial for September 28. On that date, the state and defense both announced they were ready to proceed to trial. However, the case was first reset and then continued to the next jury term due to another trial which consumed the entire period. Twice more, in both the October 19 and November 16 jury terms, the case was reset and then continued to the next jury term due to other trials. On November 16, defendant filed a motion to quash based on a denial of his right to a speedy trial. The trial judge denied the motion on November 30, 1981 without a hearing. This court granted writs and ordered a contradictory hearing be held pursuant to La.Code Crim.P. art. 701(D). At that hearing (held on December 22), the trial judge found any delay from arrest to the first trial date had not been undue because of reassignments and problems concerning codefendant's counsel. Evaluating all the circumstances since then, the judge found the state had exercised due diligence and denied defendant's motion to quash. On December 15, defendant posted bond. Defendant was tried and convicted on January 14-15, 1982.
The right to a speedy trial is guaranteed by the sixth amendment to the federal constitution and by article one, section sixteen of our state constitution. The right attaches when an individual becomes an accused whether by formal indictment or bill of information or by arrest and actual restraint. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Perkins, 374 So.2d 1234 (La.1979). Four factors must be considered in determining whether a defendant has been deprived of his right to a speedy trial: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The initial inquiry is into the length of delay; if the delay is presumptively prejudicial, there will be an inquiry into the other factors. The length of delay that will provoke such an inquiry is dependent upon the peculiar circumstances of the case. State v. Dewey, 408 So.2d 1255 (La.1982).
In this case, the length of delay between arrest and the felony trialeight and one-half monthswas not undue. Also, the reason for the delay, which is closely related to the length of the delay, involved the inordinate number of criminal cases on the docket at that time. Defendant concedes there was no bad faith by the state in delaying his prosecution. Furthermore, while he did timely assert his right, there was no prejudice to defendant. Defendant's time served from arrest to October 19 was attributed to his sentence on an unrelated offense. The following two months of incarceration prior to his posting bond was not oppressive. Of course, defendant was prejudiced to some extent by living under a cloud of suspicion and anxiety. Most importantly, however, defendant's ability to adequately prepare his defense was not impaired.[1]
Hence, we do not find that defendant's right to a speedy trial has been violated. *527 The trial court properly denied the motion to quash.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in denying his motion for the trial judge to view the scene of the crime. Defendant argues the trier of fact should have viewed the scene at night since the officers' ability to observe and identify defendant was the crucial defense issue.
Defendant requested that the trial judge look at the scene of the crime with binoculars from the vantage point of the officers and see if he could see the specific details of reenacted transactions like those the officers said they saw on the night in question. The defense at trial maintained that if the officers were wrong about the details of the drug sales they claimed to have seen, they could be wrong about the defendant being a participant, instead of being a late arrival as he claimed. The trial judge denied the request. He explained that there was ample testimony on the distances and lighting conditions at the scene and an accurate defense diagram. Considering this evidence and the terrible winter conditions then prevailing and recognizing the issue was primarily one of credibility between the officers and the defense witnesses, the trial judge declined to place himself in a position of becoming a witness as to what he himself could see.
The grant or refusal of a motion to have the trier of fact view the scene of the crime is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. La.Code Crim.P. art. 762(2); State v. Moore, 432 So.2d 209 (La.1983); State v. Johnson, 294 So.2d 229 (La.1974).
In this case, there was ample evidence before the judge to make sufficiently clear the layout and lighting conditions under which the officers had observed the incidents. Hence, the trial judge did not abuse his discretion in denying defendant's motion to view the scene of the crime.
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial court erred in allowing the state to introduce in evidence the binoculars used by Officer Gahagan to observe the drug sales. he argues that the state had failed to produce the binoculars in response to his pretrial motion for discovery.
On motion of defendant, the court shall order the district attorney to permit or authorize defendant to inspect or examine tangible objects which are within the possession, custody or control of the state and which are intended for use by the state as evidence at the trial. La.Code Crim.P. art. 718. The duty to disclose is a continuing one. La.Code Crim.P. art. 729.3. Where the defendant has been lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such a prejudice may constitute reversible error. However, the failure of the state to comply with the discovery procedure will not automatically command reversal. State v. Ray, 423 So.2d 1116 (La.1982). The defendant must show prejudice before this court will reverse his conviction. State v. James, 396 So.2d 1281 (La.1981). The court will review the record for a determination of whether any such prejudice which may have resulted from the non-compliance caused the trier of fact to reach the wrong conclusion. State v. Ray, supra.
At trial, the prosecutor explained that the binoculars were not listed in the discovery response because he had not intended to introduce them in evidence and had just obtained possession of them that morning. Upon the defendant's objection, the trial judge ascertained that the use of binoculars by Officer Gahagan had been made known throughout the proceedings. Indeed, the record reveals that Officer Gahagan's testimony at the preliminary examination on their use was no different from *528 that at trial, and that their use was referred to at a later evidentiary hearing. Further, defendant concedes he was shown the binoculars on the morning before trial.
Under the circumstances, we find no prejudice to defendant resulting from the failure of the state to list the binoculars in the discovery response. With no surprise or prejudice, the trial judge did not abuse his discretion in allowing the binoculars in evidence.
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial judge erred in allowing an expert witness for the state to respond to the prosecutor's question concerning the reason for increased illegal use of phenmetrazine.
The witness was qualified as an expert in the identification of phenmetrazine and its use both legally and illegally. Pretermitting the propriety of the question, the witness responded that he did not know why there is increased use. This response created no possible prejudice.
Assignment of Error No. 4 is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in denying his motion for acquittal based on the state's failure to establish a proper chain of custody for the admission of the phenmetrazine.
The state presented Officer Gahagan, who identified the pills and matchbox he had seized at the time of defendant's arrest and the marked envelope in which he turned them over to the crime lab the next day. The chemist who performed the test at the crime lab testified that he received the envelope and stored it in the locked evidence locker. Officer Gahagan testified that he picked up the envelope from the crime lab and brought it to court.
To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. State v. Drew, 360 So.2d 500 (La.1978). The law does not require that the evidence as to custody eliminate all possibilities that the object has been altered. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. A preponderance of the evidence is sufficient. State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972).
After reviewing the record, we find the state laid an adequate foundation for admission of the phenmetrazine by showing it was more probable than not that the items admitted were connected with the case. Hence, the trial judge did not err in admitting the phenmetrazine in evidence and denying the motion for acquittal.
Assignment of Error No. 5 is without merit.

ASSIGNMENT OF ERROR NO. 6
Defendant contends the trial judge erred in denying his motion for acquittal based on the state's failure to prove possession of the phenmetrazine by defendant.
Officer Gahagan testified that he observed defendant participate in two drug transactions immediately before his arrest. In the first sale, a female approached defendant standing in front of the vacant house. Defendant in turn spoke to Gills, who was sitting on the porch, and Gills was heard to state, "she already owes me for five." After more conversation, the female and defendant walked up to the porch area where Gills reached into a tree fork and retrieved a matchbox. Gills took out and handed pills to the female and received money from her. Shortly thereafter a car drove up, and defendant walked up to the driver's window and then returned to the *529 porch. Gills again retrieved the matchbox and sorted out a number of pills, which he handed to defendant. Defendant brought the pills to the driver and took money in exchange. Officer Holly's testimony corroborated this account of defendant's movements. Fourteen phenmetrazine pills were recovered from the matchbox in the tree upon defendant's and Gills' arrest.
One need not actually possess the controlled dangerous substance to violate the prohibition against possession thereof, constructive possession being sufficient. A person may be in constructive possession of a drug even though it is not in his physical custody if it is subject to his dominion and control. Also, a person may be deemed to be in joint possession of a drug if he willfully and knowingly shares with a companion the right to control it. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Knight, 298 So.2d 726 (La.1974).
Viewing the evidence in the light most favorable to the state, a rational trier of fact could have found beyond a reasonable doubt that defendant had either actual or constructive possession of the drugs in question. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Hence, the motion for acquittal was properly denied.
Assignment of Error No. 6 is without merit.

ASSIGNMENT OF ERROR NO. 7
Defendant contends the trial court erred in permitting the state to question a defense witness concerning a prior arrest.
Victor Young was called by defendant as a witness. He testified that he was at the intersection where defendant was arrested, he saw defendant arrive, and in the short time defendant was there, he saw no transactions as described by the state. Young admitted to certain prior convictions. On cross-examination, the state questioned Young about a drug arrest some months before in which the state's witnesses against defendant, Officers Gahagan and Holly, had participated. The trial judge allowed the questioning over defendant's objection, explaining that the question related to whether Young was biased as to these two officers.
Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness. La.R.S. 15:495. When the purpose is to show that in the special case on trial the witness is biased, has an interest, or is corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption. La.R.S. 15:492.
The limitation of La.R.S. 15:495 on the use of arrests in impeachment applies only to the method of impeaching the credibility of a witness by his prior conviction of a crime. Irrespective of its relevance to the present prosecution, a conviction per se historically is a relevant factor for the trier of fact's evaluation of a witness' credibility; however, the mere fact that a witness has been previously arrested or indicted is not regarded as logically relevant to the jury's evaluation on that ground, being a mere accusation. However, another accepted method of impeaching the credibility of a witness is by showing that the witness is biased or interested in the special case on trial because of partiality or of any acts, relationships, or motives reasonably likely to produce it. Louisiana jurisprudence has generally permitted full scope of cross-examination in the interest of exposing for trier of fact evaluation any bias or interest of the witness which might influence his perceptions or color his testimony. State v. Robinson, 337 So.2d 1168 (La.1976).
Only one prior arrest was raised by the state. The questioning went to whether Young had been arrested by the same two officers who arrested and testified against defendant. The testimony was offered solely to show bias, interest or corruption in this particular case. Indeed, Young's testimony was directly relevant to that issue:

*530 Q Do you feel that these narcotics agents in particular and narcotics agents in general are out after you for any particular reason? Do you feel like they are persecuting you?
A I feel so.
Q You think so sometimes?
A Yes, sir.
Q These agents in particular?
A Yes, sir.
Thus, the present cross-examination as to the arrest was not within the prohibition of La.R.S. 15:495 because it was independently relevant and permitted under La.R.S. 15:492 to show particular bias in the special case before the court.
Assignment of Error No. 7 is without merit.

ASSIGNMENT OF ERROR NO. 8
Defendant contends his conviction was based on insufficient evidence.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Graham, 422 So.2d 123 (La.1982).
Officers Gahagan and Holly testified that they observed defendant participate in two drug sales from their vantage point in a cemetery immediately overlooking the street corner in question on the night of the crime. Both testified that the area was well lit. Officer Gahagan used binoculars to observe the two transactions from about eighty feet away. The officers then returned to their car and proceeded around to the arrest site. Both maintained the scene was out of their sight only three to five minutes. Defendant claimed that he only walked up to the corner moments before the police arrived, and defense witnesses testified that another named person dressed similarly to defendant that night had been present but left right before defendant and then the police arrived. Officer Gahagan testified that he knows that other person and that he was not there but defendant was, and that this identification was based on facial recognition and not clothing alone.
Viewing this evidence in the light most favorable to the state, we find a rational trier of fact could have found beyond a reasonable doubt that defendant did possess phenmetrazine with intent to distribute.
Assignment of Error No. 8 is without merit.

ASSIGNMENT OF ERROR NO. 9
Defendant contends the trial judge erred in imposing an excessive sentence.
The defendant was sentenced to serve five years at hard labor. The maximum penalty that defendant was subject to was imprisonment for ten years at hard labor and a fine of fifteen thousand dollars. At the sentencing hearing, evidence of defendant's character, personal history and other factors was fully developed and considered by the trial judge. While unemployed at the time of arrest, defendant was employed by the City of Shreveport while awaiting sentence and had been scheduled to begin CETA vocational training before his arrest. Defendant's pastor stated his willingness to have defendant entrusted to his custody on probation; however, that was not recommended in the presentence report. Defendant, single and age 29, had no prior felony convictions. He had served six months for receiving stolen goods, six months for attempted simple escape, two months for possession of marijuana, and six months for misdemeanor theft. Defendant had also been arrested for burglary, distribution of heroin, aggravated assault, and simple battery. The trial judge concluded that it was likely that defendant's conduct would recur and that defendant needed confinement in a custodial environment. In reaching his conclusion, the trial judge considered that defendant was *531 literally providing curb service delivery of drugs for profit.
La. Const. art. 1, § 20 prohibits the imposition by law of excessive punishment. Accordingly, we have held that imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment that is enforceable on appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). Given compliance with La.Code Crim.P. art. 894.1, a sentence will not be set aside as excessive in the absence of a manifest abuse of the trial judge's wide sentencing discretion. State v. Spencer, 374 So.2d 1195 (La.1979). The penalty imposed must be so grossly disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980).
Under the circumstances, we are unable to say that the trial judge abused his discretion in sentencing defendant to five years at hard labor. We do not consider the penalty imposed so disproportionate to the crime committed as to shock our sense of justice. Hence, we do not find defendant's sentence excessive.
Assignment of Error No. 9 is without merit.

ASSIGNMENT OF ERROR NO. 10
Defendant contends the trial court erred in finding probable cause at the preliminary examination. He further argues that there was no probable cause for his warrantless arrest.
The question of probable cause for defendant's pretrial imprisonment is now moot since defendant has been tried and convicted. State v. Luckett, 327 So.2d 365 (La.1976); State v. Richardson, 258 La. 62, 245 So.2d 357 (La.1971).
A defendant adversely affected may move to suppress any evidence from use at trial on the ground that it was unconstitutionally obtained. La.Code Crim.P. art. 703. The record reveals that defendant filed such a motion but later withdrew it. Hence, probable cause for his arrest is not properly before us. In any event, we find ample evidence in the eyewitnesses' accounts by Officers Gahagan and Holly of the ongoing drug sales to support probable cause for defendant's arrest.
Assignment of Error No. 10 is without merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
NOTES
[1] Defendant now claims that one potential alibi witness, Mrs. Laura Law, was ill and unavailable at the time of trial. The record reveals no mention of Laura Law or her illness by defendant to the trial court. Moreover, defendant conceded at trial that he only required two of the three witnesses involved. The main one was Sandra Law, defendant's ex-girlfriend, who testified that she remembered that defendant left her house shortly before the time of his arrest on April 27, 1981. Although the court reminded defendant he was entitled to instanter subpoenas without bond at his pleasure, defendant did not even seek to compel the testimony of Rudy Law (who had refused by phone to come to court that morning). Given the nature of Sandra Law's testimony, the absence of Laura Law was de minimis.