693 So.2d 180 (1997)
STATE of Louisiana, Appellee,
v.
Roosevelt SMALL, Appellant.
No. 29137-KA.
Court of Appeal of Louisiana, Second Circuit.
April 2, 1997.
*183 Joseph M. Clark, Sr., Shreveport, for Appellant.
Richard Ieyoub, Attorney General, Paul Carmouche, District Attorney, Rebecca Irwin Bush, Assistant District Attorney, Catherine Estopinal, Assistant District Attorney, for Appellee.
Before BROWN, GASKINS and PEATROSS, JJ.
BROWN, Judge.
Defendant, Roosevelt Small, was convicted of one count of aggravated rape and one count of aggravated burglary. He was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence on the rape count and as a second felony offender, he was given a consecutive 50 year sentence on the burglary count. Defendant appeals. We affirm.

*184 Facts

On August 15, 1994, Kirk and Mardie were married in the Bahamas. Following a honeymoon in Key West, they returned to their home in Shreveport on August 26, 1994. At about 11:00 p.m. on August 29, 1994, while Kirk was at work, Mardie took the dog, Tyler, for a walk outside the couple's residence in the Timber Ridge Apartment complex. When she returned, Mardie failed to lock the door behind her. While in the kitchen, Mardie heard the door opening and was confronted by defendant, an unfamiliar black male, who asked whether her husband was at home. Although she said her husband was home, defendant advanced toward her, grabbed her arms, pinned her to the floor and began stuffing paper towels in her mouth, telling her to be quiet and not to look at him. While defendant was putting paper towels into her mouth, Mardie bit him on the hand.
Mardie was forced by defendant into the dining room where he tied her hands with a cord. Defendant removed the paper towels from Mardie's mouth to question her about the neighbors and when her husband would be coming home, then replaced the paper towel gag.
Defendant forced Mardie into the bedroom and had her put the dog into the closet. Defendant then put Mardie on the bed and retied her hands behind her back with one of her husband's belts. The dog managed to escape from the closet and jump onto the bed; defendant knocked the dog off, untied Mardie and had her put the dog back into the closet. This time, Mardie blocked the closet door with a piece of furniture. Defendant then held Mardie's hands behind her back and removed her shorts and underwear. He told her that he needed some money, tied her hands behind her back with the belt and attempted to blindfold her with one of her husband's t-shirts. However, Mardie was still able to see defendant. She could see that defendant had taken off his pants.
While defendant was rummaging through the apartment looking for money and valuables, Mardie saw Kirk's Glock 9 mm pistol in its holster on the dresser at the foot of the bed. Mardie worked her hands free and got up and grabbed the pistol; however, defendant returned to the bedroom and the two began struggling over the gun. Mardie stated that she fell into the window and that defendant hit her, wresting the gun away. During the struggle, Mardie's blindfold fell around her neck.
Sarcastically, defendant asked her, "What were you going to do? Shoot me?" He then retied Mardie's hands, gagged her with her bikini bottoms, fixed the blindfold and put her back on the bed. At some point, defendant cocked the pistol. After removing the gag, defendant began kissing Mardie on the mouth, instructing her to kiss him like he was her husband and as if she meant it. Defendant told her, "Be quiet and I won't hurt you. I don't want to have to kill you." Defendant then pulled up Mardie's shirt and bra and began licking her breasts. She stated that she could feel him rubbing his pelvis on her, as if he were trying to arouse himself.
Mardie then heard her husband's motorcycle; she then heard Kirk enter the apartment. Defendant jumped up and grabbed his clothing. Mardie screamed at Kirk, telling him that defendant had the gun. Defendant ran out of the bedroom. According to Kirk, his wife sounded as if she was absolutely hysterical and in shock. Defendant told Kirk, "Back the fuck up, mother fucker. I'll fucking kill you. Back up." Kirk retreated and sat on the couch as Mardie ran into the bathroom and locked the door. As defendant ran out of the apartment, Kirk told his wife to stay in the bathroom and he attempted to get a better look at his wife's attacker, who turned back and fired a shot in Kirk's direction. Kirk, however, was not hit; he dialed 911 and threw the cordless phone to Mardie and began looking for his gun. Mardie testified that she could hear her husband outside the apartment, screaming for help.
Mardie reported the attack to the 911 operator. Kirk and Mardie went next door to Andrew Beigher's apartment and called 911 a second time. They remained at Mr. Beigher's until the police arrived. Kirk stated that they did not return to their own apartment in order to preserve the scene for police.
*185 Off-duty police officer J.C. Bonanno was the next person to see defendant. Officer Bonanno, who lived in a nearby apartment complex, was taking his dog outside when defendant bumped into him. Defendant was walking briskly; he mentioned nervously that he was looking for his car. Officer Bonanno, the complex's courtesy officer, did not recognize defendant as a resident, and followed him. Officer Bonanno caught up with defendant and offered to help him locate his vehicle; defendant startled the officer by shouting suddenly, "don't shoot me."
At that time, Officer Bonanno who was armed although his gun was not drawn or visible, decided to detain defendant. The officer discovered that defendant was armed with a Glock pistol and that he had in his possession a sobriety coin from AA (later determined to have been taken from Mardie). Officer Bonnano's attention was momentarily diverted by a passing car and defendant made a grab for the pistol. The two men struggled, the weapon went off and defendant ran away. Defendant was shot during the struggle, but he was not seriously hurt.
Officer Bonanno chased defendant down the street and another passing officer apprehended defendant. Defendant's pants were unzipped and his underwear was later recovered near where he and Officer Bonanno had scuffled. Defendant was also in possession of several other items belonging to the victim, such as guitar picks and a souvenir dollar from the Bahamas.[1] Kirk and Mardie identified defendant the following day in a police line-up.
Defendant, charged by a grand jury with one count of aggravated rape and one count of aggravated burglary, was tried by a jury on December 12, 1995. Defendant testified that his encounter with Mardie was consensual, part of a year-long affair that began when he met her at Krogers. Defendant was unable to provide any details about the victim's life, nor was he able to present any other evidence in support of his version of the events of August 29, 1994. Defendant also claimed that he took the gun to protect himself from Mardie's husband and that the gun went off when he tripped on his way out of the apartment.
The jury of twelve found defendant guilty as charged. Defendant's post-trial motions for new trial and post-verdict judgment of acquittal were denied. Defendant was adjudicated a second felony offender because of a prior drug conviction and sentenced to life imprisonment without benefit on the aggravated rape conviction and a 50 year consecutive sentence on the aggravated burglary conviction. Following denial of his motion to reconsider, defendant appealed.

Discussion

Trial Procedure
Assignment of Error No. 1. The trial court erred in denying defendant the right to reserve his opening statement until the presentation of his defense.
After the prosecutor completed her opening statement, defense counsel informed the court that defendant wanted to reserve his right to make an opening statement until presentation of the defense. The state's attorney objected and, after a bench conference, the court stated that there was no authority for such a request and that the law does not provide for such a reservation. Accordingly, defense counsel's request was denied. Defense counsel argued that he had reserved his opening in a case just three weeks before; however, he admitted that in that case, the prosecuting attorney had not objected. The court gave defense counsel ten minutes to prepare an opening statement.
On appeal, defendant argues that the trial court's refusal to allow him to postpone his opening statement until after the state had rested was error. According to defendant, he was prejudiced because he was forced to either waive his opening statement or make his introductory remarks with inadequate preparation.
*186 La.C.Cr.P. art. 765 sets forth the normal order of trial as follows:
(1) the selection and swearing of the jury;
(2) the reading of the indictment;
(3) the reading of defendant's plea on arraignment;
(4) the opening statements of the state and defendant;
(5) the presentation of the evidence of the state, the defendant, and the state in rebuttal;
(6) the argument of the state, the defendant and the state in rebuttal;
(7) the court's charge;
(8) the announcement of the verdict or mistrial in jury cases, or the judgment in non-jury cases; and
(9) the discharge of the jury in jury cases.
Article 765 further provides that defendant may waive his opening statement.
In this case, defendant failed to show how maintaining the normal order of trial prejudiced his defense. See State v. Lowdins, 412 So.2d 1349 (La.1982). La.C.Cr.P. art. 765 clearly prescribes the normal order of trial and the trial judge noted that in his experience, variation from this procedure was so unusual as to be unique. Defense counsel's complaint that the denial of his request prejudiced him because it left limited time for preparation is specious; the onus of altering the normal order of trial was on defense counsel, who should have been prepared to open in the event his request was denied. Furthermore, defendant's attorney appeared to be familiar with the case and was able in his opening statement to present an explanation of the facts which, if supported, would exonerate his client. This assignment of error is without merit.
Assignment of Error No. 2. The trial court erred in failing to grant defendant's motion to recuse the trial judge.
On December 4, 1995, defendant filed a motion to recuse the trial judge. Citing La.C.Cr.P. art. 671(A)(1) and (6), defendant argued that there was a pattern established for Judge Crichton to be on the bench when Rebecca Bush was the prosecuting attorney. In support of this theory, defendant emphasized that:
(1) Judge Crichton had conducted the preliminary examination in this case in 1994;
(2) Judge Crichton thereafter transferred to the civil bench and Judge Walker took his place on the criminal bench;
(3) Judges Crichton and Walker agreed to trade places for two weeks at the time that this case was scheduled to go to trial;
(4) Judge Crichton, a former Caddo Parish assistant district attorney, was once Ms. Bush's colleague; together, they tried numerous cases;
(5) Defense counsel stated that he had been provided with information that on at least one prior occasion, Judge Crichton had left the civil bench to return to the criminal bench solely to try an aggravated rape case that Ms. Bush was prosecuting; and
(6) These facts establish a pattern that Judge Crichton will be the trial judge whenever Ms. Bush is the prosecuting attorney.
Defendant's motion was heard and denied the day it was filed. Defense counsel then filed an emergency supervisory writ in this court, which was denied.
La.C.Cr.P. art. 671(A) provides in part that in a criminal case, a judge of any court, trial or appellate, shall be recused when he:
(1) is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
(6) would be unable, for any other reason, to conduct a fair and impartial trial.
A trial judge is presumed impartial and the burden is on the defendant to prove otherwise. State v. Edwards, 420 So.2d 663 (La.1982); State v. Higginbotham, 541 So.2d 348 (La.App. 2d Cir.1989), writ denied, 556 So.2d 28 (La.1990). One seeking to recuse a judge on this basis must allege or provide a factual basis for his allegation of bias or prejudice and may not simply make conclusory allegations.
*187 Defendant has made no showing that the trial judge was in any way prejudiced in the state's favor. The coincidental presence of a judge on the criminal bench with a former co-worker as the prosecuting attorney is, without more, insufficient to require the judge's recusal. We find this assignment of error to be without merit.
Assignment of Error No. 6. The trial court erred in denying defendant equal protection and due process of law in failing to allow argument pertaining to objections to be made part of the record.
Defendant contends that objections during the trial were argued "off the record" and that his ability to properly argue this appeal was thus hindered.
In State v. Mamon, 26,337 (La.App. 2d Cir. 12/16/94), 648 So.2d 1347, this court addressed a similar claim and recited the pertinent law:
In felony cases, the clerk or court stenographer shall record all proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements and arguments of counsel. La.C.Cr.P. art. 843; State v. Ford, 338 So.2d 107 (La.1976). To effectuate the guarantee of an appeal in felony cases, a complete record is needed for proper support and review of assigned errors. State v. Richardson, 529 So.2d 1301 (La.App. 3d Cir.1988), writ denied, 538 So.2d 587 (La.1989). However, an omission from the record which is inconsequential and immaterial to a proper review on appeal does not require reversal of a conviction. State v. Johnson, 438 So.2d 1091 (La.1983); State v. Ford, supra; State v. Diaz, 93-1309 (La.04/06/94), 635 So.2d 499; State v. Velez, 588 So.2d 116 (La.App. 3d Cir.1991), writ denied, 592 So.2d 408 (La.1992); State v. Richardson, supra.

State v. Mamon, 648 So.2d at 1354.
Similarly to the accused in Mamon, defendant has not alleged specifically what prejudice he has suffered from the absence of a record of the arguments and, more importantly, he did not object to the procedure during the trial. In fact, defendant has pointed to no particular instance where the omission of the argument has caused him difficulty in briefing his numerous assignments of error. The absence of a transcript will in no way reduce the scrutiny given defendant's arguments on appeal. See State v. Johnson, 438 So.2d 1091 (La.1983); State v. Clark, 93-903 (La.App. 3d Cir. 03/16/94), 638 So.2d 225. In light of defendant's failure to show prejudice from the omission, this assignment of error is without merit.
Assignment of Error No. 11. The trial court erred in denying defendant's motion for disqualification of the prosecuting attorney.
Several months before trial, defendant filed a motion for discovery of any possible basis for disqualification of the prosecuting attorney. The court minutes show that this motion was denied.
The motion is reproduced in full in defendant's brief. It appears that defendant wanted the assistant district attorney to advise him whether she had engaged in any conduct that was so unethical that she should be disqualified from prosecuting his case.
La.C.Cr.P. art. 680 provides the grounds for recusal of district attorneys and art. 681 sets forth the procedure by which recusal is accomplished. It is apparent from these articles that the burden of proving that a district attorney should be recused, where the prosecutor does not recuse herself, lies with defendant. State v. West, 561 So.2d 808 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La.1990). In his motion, defendant essentially asked the state to carry his burden of proof. We find no statutory or jurisprudential basis requiring the state to bear the burden. Defendant has not established prejudice in the trial court's denial of this motion.
This assignment of error is without merit.
Assignment of Error No. 12. The trial court erred in denying defendant's motion for a transcript of the grand jury testimony.
On the same day the motion to recuse the prosecutor was filed, defendant filed a second motion, this one seeking a transcript of the grand jury testimony. According to defendant, Louisiana's rules should be liberalized *188 and grand jury testimony should be made available on a lesser showing. However, defendant did not address why in this case he would be entitled to a production of the grand jury transcript under La.C.Cr.P. art. 434. Defendant's motion was denied by the court after an in camera inspection on November 29, 1995.
Louisiana law strictly maintains the secrecy of grand jury proceedings. When a party seeks the disclosure of grand jury testimony, he bears the burden of showing a particularized need for violating the secrecy of the grand jury proceedings. A general claim that disclosure of grand jury testimony would reveal evidence of perjury is insufficient to satisfy the requirement of a showing of particularized need. State v. Evans, 27,750 (La.App. 2d Cir. 02/28/96), 669 So.2d 719, writ denied, 96-0793 (La. 06/28/96), 675 So.2d 1119. To strike a balance between the accused's right to confront his accusers and the state's interest in maintaining secrecy, the supreme court has authorized an in camera inspection of grand jury transcripts to determine whether they may be used for impeachment purposes. State v. Peters, 406 So.2d 189 (La.1981).
On appeal, defendant has not addressed the issue of how he was prejudiced by the trial court's denial of the grand jury transcript. There has been no showing of irregularity which would warrant a departure from Louisiana's longstanding tradition of grand jury secrecy.
This assignment of error is without merit.

Evidentiary Rulings
Assignment of Error No. 3. The trial court erred in allowing State's Exhibit # 93 to be admitted without requiring the establishment of a proper foundation.
Assignment of Error No. 15. The trial court erred in allowing State's Exhibit # 115, 110, 111 and 118 to be admitted without requiring the establishment of a proper foundation.
According to defendant, certain items were improperly allowed into evidence without the predicate establishment of a foundation for their introduction.
To admit demonstrative evidence at trial, the law requires that the object be identified. Identification may be visual, i.e. by testimony that the object exhibited is the one related to the case, and it may be by chain of custody. State v. Sweeney, 443 So.2d 522 (La.1983); State v. Baker, 28,152 (La.App. 2d Cir. 05/08/96), 674 So.2d 1108. The state need only establish by a preponderance of evidence that the object is the one connected with the case. State v. Sweeney, supra.
State Exhibit # 93: Work Order
As a witness, the prosecutor called Kelli Hennigan, manager of the apartment complex in which Mardie and Kirk lived. Ms. Hennigan testified that she was the custodian of records for the apartment complex. The state offered a work order for replacement of a window pane in Apt. 283, the victim's apartment, dated August 30, 1994, the day after Mardie was raped. Defendant objected, apparently on foundation grounds, and after a bench conference, defendant's objection was overruled. On appeal, defendant argues that he was prejudiced by the introduction of this evidence because it wrongly suggested that there was a violent struggle between defendant and Mardie inside the apartment.
On cross-examination, the jury heard that Ms. Hennigan, who lived directly across from the victim, knew that the window was intact on August 29, 1994, and had personally viewed the damage from both inside and outside the apartment. Ms. Hennigan testified that "the whole window was shoved outward." Mardie did not say that she had broken the glass out of the window; she indicated that she had fallen against that particular window after defendant hit her.
The trial court did not err in allowing evidence of the broken window. However, even if introduction of the work order was erroneous, defendant has shown no prejudice; his claim that the broken window improperly showed that a violent struggle occurred in the bedroom is greatly overwhelmed by the victim's testimony, particularly *189 her statement that defendant wrested a loaded gun from her during a struggle in the bedroom prior to raping her.
State Exhibit Nos. 110, 111 and 118: Photographs of Thumb, Finger and Thumbnail
The state introduced a photograph of defendant's right thumb, which depicted a very large blister, an enlarged photograph of a finger showing what appears to be some broken skin, and an enlarged photograph of defendant's thumbnail. Defendant objected to the introduction of these photos because they were enlargements "so dark as to be indistinguishable" and because the enlarged photos were not accurate depictions of what they purported to show.
On appeal, defendant complains for the first time that there was an improper foundation laid for the introduction of the pictures. This was not defendant's basis for objection at trial; a new ground for objection may not be raised for the first time on appeal. State v. Walker, 28,577 (La.App. 2d Cir. 10/04/96), 681 So.2d 1023; State v. Plater, 606 So.2d 824 (La.App. 2d Cir.1992). As for defendant's original objection, Detective Mickey Lowe testified that he took pictures of defendant's hand at the hospital and that the photographs in question accurately represent the condition of his hand at the time.
State Exhibit # 115: Hair Sample
A reference hair sample collected from defendant was introduced into evidence over defense counsel's objection that the state had failed to establish chain of custody. The technician who collected the samples, Richard Beighley, testified that he gave the samples to the clerk in the secure area of the crime lab but admitted that he did not witness the clerk putting the samples into the vault.
The basic requirement for the introduction of demonstrative evidence is to show that more probable than not the object is what it purports to be. La.C.E. art. 901(A). This may be proven by either chain of custody or visual identification by showing, for example, that the object is what it purports to be by virtue of its distinctive characteristics. La.C.E. art. 901(B)(4). The lack of positive identification or defect in chain of custody when the preponderance of evidence standard has been met goes to the weight of the evidence, not to its admissibility. State v. Hall, 624 So.2d 927 (La.App. 2d Cir.1993), writ denied, 629 So.2d 1182 (La.1993); State v. Moore, 575 So.2d 928 (La.App. 2d Cir. 1991).
No irregularity was shown in the procedures for storing, collecting and identifying the hair sample evidence. Furthermore, regardless of whether the foundation was adequate, the state did not attempt to show that the samples collected from defendant matched samples taken from the apartment. We do not see how defendant was prejudiced by this evidence.
These assignments are without merit.
Assignment of Error No. 7. The trial court erred in granting the state's motion in limine.
Before trial, the state filed a motion in limine requesting that the court limit evidence of the victim's prior sexual conduct pursuant to La.C.E. art. 412(B) and (C), the rape shield law. The motion was heard on December 4, 1995, and the trial court's ruling was deferred.
At trial, defense counsel cross-examined Dawn Tingle, the state's DNA/serology expert about the items that were tested for DNA. The state objected to the question on the ground that it might violate the rape shield law.[2] Defense counsel objected to his questioning being limited and after extended discussion, the trial court instructed defense counsel to restrict his questions to items which matched defendant, the victim and her husband. From the transcript, it appears that this solution was acceptable to defense counsel as no further objections were made.
On appeal, defendant asserts that the limitation of his cross-examination was constitutionally objectionable. In support, he argues *190 that there was a stain on the victim's swimsuit bottoms not matched to defendant, the victim or her husband and that he should have been able to cross-examine Ms. Tingle about this because it could easily have created reasonable doubt about whether or not it was defendant who had sex with Mardie on the night of August 29, 1994.[3]
In State v. Vaughn, 448 So.2d 1260 (La. 1983), the court explained the balancing approach required by the rape shield statute:
[The statute] abates the victim's ordeal at trial, lessens the possibility of unjust influence by inflammatory evidence, and encourages reports of rape. Thus, in balancing the invocation of the shield against the right of confrontation in a particular case, the shield should be given weight according to the degree to which it fulfills the purposes of the rape shield law in that case. Against this in each case must be weighed the extent to which the rape shield law would exclude evidence which is genuinely relevant, highly probative, and critical to the accused's defense. If the rape shield law in the particular case fails to serve its purpose, overreaches its legitimate aim, or entrenches upon the right to a fair trial, it must yield to the confrontation guarantees of our state and federal constitutions.
State v. Vaughn, 448 So.2d at 1262.
As the state points out, defendant did not raise this particular argument regarding the swimsuit bottoms at any time during trial. The prosecution seemingly rendered moot any argument in this area by eliciting information about how stains can be unknown or unmatchable to a particular person. Defense counsel asked a number of questions of Ms. Tingle and elicited the pertinent facts about the DNA analysis. Moreover, defendant testified that he and Mardie were in the bedroom of the victim's apartment on the night in question and admitted that he began to remove his clothes at one point; of course, defendant's theory was that the encounter was consensual. It is difficult to see how an expanded cross-examination about bloodstains would impact the credibility call the jury made about this testimony in light of the testimony of the DNA expert, the victim and her husband and the other witnesses.
This assignment of error is without merit.
Assignment of Error No. 13. The trial court erred in denying defendant's motion to exclude evidence.
Defendant filed a motion for discovery seeking, inter alia, reports of any scientific tests made on the evidence in this case. The state's initial response was made on December 9, 1994, and a second response was filed April 19, 1995. Defendant filed a motion concerning the DNA testing and the state responded on July 31, 1995.
On November 29, 1995, the state made a supplemental discovery answer. Jury selection began on December 4 and was completed December 7, 1995. Defendant filed a motion requesting either the exclusion of evidence or a continuance to enable independent testing of the evidence. Defendant contended that he was most injured by the results of DNA testing of stain T-3 on Mardie's swimsuit bottoms because the stain had not been labeled on prior drawings of the swimsuit and because DNA testing linked the stain exclusively to defendant. However, defendant did not complain about the test results of stain T-2, which were a mixture of his DNA and an "unknown."[4] The record reflects that defendant's motion was denied.
At trial, testimony regarding the DNA/serology evidence was given by Dawn Tingle, the state's criminalist. The overall results of the DNA testing matched defendant (to the exclusion of the victim and her husband) to two items found in the apartment after the attack, the swimsuit bottoms and a longsleeve t-shirt. The results of the serology (blood) testing matched defendant to four items in the apartment to the exclusion of the victim and her husband. Ms. Tingle testified *191 that the crime lab cut out and tested stain T-2 from the swimsuit and that human blood was found. She later testified, without reference to a particular stain, that she had made a DNA match of defendant to the swimsuit. Using serology alone, Ms. Tingle stated that she was unable to determine whether the stain on the bathing suit matched the victim's husband or defendant; however, DNA testing confirmed that the stain matched defendant. Stain T-3 was not mentioned during direct examination, but on cross-examination, Ms. Tingle described both stains. Ms. Tingle also said that tests excluded either of Mardie or Kirk from the stains on the swimsuit bottoms.
La.C.Cr.P. art. 729.5(A) provides:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
The defendant has the right, upon motion, to inspect and copy reports of scientific tests in the possession of the state and intended for use at trial. La.C.Cr.P. art 719. However, the state has no obligation to disclose information that it does not possess. State v. Powell, 598 So.2d 454 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La. 1992). The state has a continuing duty to disclose additional evidence which it discovers or decides to use at trial. La.C.Cr.P. art. 729.3.
When disclosure of new evidence occurs shortly before trial, the trial court has great discretion to fashion a remedy that will offset the potential prejudice. State v. McLemore, 26,106 (La.App. 2d Cir. 06/24/94), 640 So.2d 847, writ denied, 94-1908 (La. 12/09/94), 647 So.2d 1107, U.S. cert. denied, ___ U.S. ___, 115 S.Ct. 1974, 131 L.Ed.2d 863 (1995). Defendant must show prejudice in order for his conviction to be reversed. State v. Huff, 27,212 (La.App. 2d Cir. 08/23/95), 660 So.2d 529. Where defendant has been lulled into a misapprehension of the strength of the state's case by the failure to disclose fully, such prejudice may constitute reversible error. State v. Sweeney, supra; State v. Huff, supra.
Sanctions for failure to comply with discovery motions are solely within the discretion of the trial judge and reversal is warranted only when there is an abuse of discretion and prejudice is shown. State v. Morris, 28,312 (La.App. 2d Cir. 08/21/96), 679 So.2d 482. The effects of a discovery violation may be remedied by effective crossexamination. State v. Powell, supra.
In his motion to exclude the evidence, defendant states that he received the discovery response regarding stain T-3 on November 30, 1995, the record indicates that it was provided in open court on the 29th. The state's expert did not testify concerning this evidence until December 11, 1995. This was not such a short period of time that counsel was not able to prepare a defense. Even completely excluding evidence of the swimsuit bottoms, defendant was exclusively linked to two t-shirts and a sock found in the victim's apartment. This evidence had been disclosed to defendant on December 9, 1994, about a year before trial, and it was hardly a surprise that the state could prove that defendant had been in the victim's apartment. Moreover, defendant's theory of the case was that the encounter between him and Mardie was consensual; the blood/DNA evidence on the swimsuit bottoms was cumulative of the other blood evidence tending to show that the encounter was violent.
This assignment of error is meritless.
Assignment of Error No. 16. The trial court erred in accepting Dawn Tingle as an expert in the field of DNA and serology.
Dawn Tingle, the supervisor of the serology and DNA section at the Northwest Louisiana Crime Lab, performed or interpreted the scientific tests which linked defendant's blood and DNA to evidence found at the crime scene. Ms. Tingle testified that she had a bachelor's degree in Biology from Milsaps College and that she had held her *192 position at the crime lab for five years. According to Ms. Tingle, she had qualified as an expert in serology approximately 50 times and in DNA analysis on ten occasions.
Defendant objected to the court's acceptance of Dawn Tingle as a DNA/serology expert under La.C.E. art. 702. On appeal, defendant contends that Ms. Tingle's qualifications were inadequate considering the almost conclusory effect that DNA matching has on the fact finder. Defendant asserts that this was the very first case in which Ms. Tingle had been qualified as an expert in the field of DNA analysis. This assertion, however, is directly contradicted by Ms. Tingle's testimony noted above.
A witness qualified as an expert by knowledge, skill, experience, training or education may testify, in the form of an opinion or otherwise, regarding scientific, technical or other specialized knowledge if it will assist the trier of fact to understand the evidence or to determine a fact in issue. La.C.E. art. 702. Broad discretion should be accorded the trial judge in his determination as to whether expert testimony should be admissible. Comment (d), La.C.E. art. 702; State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dismissed, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984); State v. Hill, 601 So.2d 684 (La.App. 2d Cir.1992), writ denied, 608 So.2d 192 (La.1992); State v. Lewis, 95-0209 (La.App. 4th Cir. 04/13/95), 654 So.2d 761.
Defendant has failed to show that the trial court abused its discretion. Ms. Tingle explained her credentials and noted that she has qualified as an expert in DNA ten times; in fact, she has never failed to so qualify.
This assignment is without merit.
Assignment of Error No. 17. The trial court erred in accepting hearsay testimony concerning statements of the victim made to third parties.
Defendant argues that the trial court should not have allowed Andrew Beigher, the next-door neighbor, and Lt. Derrick, a Shreveport police officer, to testify about what other persons told them.
Andrew Beigher testified that he was asleep during the incident of August 29, 1994, but that he woke up when he heard "yelling and screaming." Mr. Beigher stated that he got out of bed, saw Kirk running in the parking lot, then began getting dressed. He heard a banging on his door, which he opened to allow Mardie inside to call 911. Over defendant's objection, Mr. Beigher said that Mardie told him that a black man had entered her apartment, forced her into the back room and raped her.
This statement is clearly admissible nonhearsay under La.C.E. art. 801(D)(1)(d), which provides:
A statement is not hearsay if ... the declarant testifies at the trial ... and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.
The conditions of art. 801(D)(1)(d) are satisfied; Mardie testified consistently at trial, was subject to cross-examination and this was her initial complaint of rape. Mr. Beigher's testimony was properly admitted on these grounds.
Defendant's second argument pertains to the testimony of one of the police officers who responded to the 911 call. Lieutenant Jim Derrick, Director of the Crime Scene Investigations Unit of the Shreveport Police Dept., went to the victim's apartment to collect evidence. Lt. Derrick testified that during the evidence collection process, he had Mardie take him through the apartment and show him where the various events occurred. Defense counsel cross-examined the detective concerning whether Mardie was allowed to enter the apartment after police arrived. According to Lt. Derrick, "it is just... basic police procedure not to allow a victim of a crime to alter in any form or fashion the crime scene itself prior to the investigation by the police services." Whether that occurred in this case was a disputed issue. In order to resolve this issue, the prosecutor asked the officer whether Mardie was ever in the apartment outside of his view or outside the presence of another officer. Defendant objected to this question on the basis that the officer did not have personal knowledge of the issue. The objection was *193 overruled and Lt. Derrick responded that from the time he arrived on the scene, the victim was not allowed to enter unescorted any part of the apartment. On appeal, defendant argues that this was hearsay. Nothing in the officer's response, however, fits the definition of hearsay set forth in La.C.E. art. 801(C); Lt. Derrick was not repeating the words of another, he was merely relating his observations.
This assignment of error has no merit.

Sufficiency of the Evidence
Assignment of Error No. 5. The evidence, when viewed in a light most favorable to the state, does not reasonably permit a finding of guilty of aggravated rape.
Assignment of Error No. 8. The trial court erred in denying defendant's motion for new trial.
Assignment of Error No. 9. The trial court erred in accepting a verdict contrary to the law and evidence.
Assignment of Error No. 10. The trial court erred in denying defendant's motion for postverdict judgment of acquittal.
In these four assignments of error, defendant challenges the sufficiency of the state's evidence against him.
The proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
La.C.Cr.P. art. 821 provides that a motion for post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
Arguing error in the trial court's failure to grant his motion for post-verdict judgment of acquittal, defendant asserts only that the victim's version of the events was unbelievable and that there was little or no evidence that he penetrated her.
It is well-established that the testimony of the victim alone is sufficient to establish penetration. State v. Rives, 407 So.2d 1195 (La.1981); State v. Prestridge, 399 So.2d 564 (La.1981); State v. Lewis, 577 So.2d 799 (La.App. 2d Cir.1991), writ denied, 582 So.2d 1304 (La.1991).
The following exchange took place between the prosecutor and Mardie:
Q: Now, what happened at that point?
A: He tried to start penetrating.
Q: Okay. And, Mardie, I apologize. I have to use some very specific terms here. Did he try to put his penis in your vagina.
A: Yes.
Q: Could you please explain to the jury how he was attempting to do that?
A: It was like he wanted me to be turned on. He wasn't trying to just force it. He was like just trying to poke it in, I guess.
Q: So he was poking at you with his penis?
A: (Witness nods head.) I was very tense and dry.
Q: Your vagina was dry?
A: Yes.
Q: Did it go in?
A: A little, not fully.
Defendant asserts in brief that Mardie told the 911 operator and Detective William Nelson that she had not been raped and that Mardie told Dr. Kirk Brody, the physician who examined her, that she wasn't sure that she had been penetrated. Mardie explained that when she told the 911 operator she had not been raped, she meant only that defendant had not ejaculated inside her. Detective Nelson stated that Mardie told him that penetration was made. Dr. Brody related that she told him that she wasn't sure whether she had been penetrated, but she knew it *194 had been attempted. Dr. Brody testified that her genital area was red and slightly swollen, consistent with non-consensual unlubricated sexual intercourse and he opined that Mardie had been penetrated.
Considering the evidence as a whole, the jury was reasonable in concluding that the penetration element of rape had been proven. According to La.R.S. 14:41(B), emission is not necessary and any sexual penetration, vaginal or anal, however, slight, is sufficient to complete the crime.
In light of Dr. Brody's opinion that there was penetration and the testimony as a whole, the evidence was sufficient to prove all of the elements of aggravated rape.
These assignments of error are without merit.

Excessiveness of Sentence
Assignment of Error No. 4. The trial court erred in imposing an excessive sentence.
Defendant was sentenced as a second felony offender on the aggravated burglary charge to 50 years imprisonment consecutive with his life imprisonment without benefit aggravated rape sentence. Defendant timely filed a motion to reconsider sentence, urging that the 50-year sentence was excessive and that it should not have been imposed consecutively. The trial court denied this motion, citing a number of factors set forth in La.C.Cr.P. art 894.1 to justify the sentence. Among the more serious factors were that defendant's actions during the offense were deliberately cruel, causing significant permanent injury; that defendant created a risk of death or great bodily harm to more than one person; that defendant foreseeably endangered human life by discharging a firearm during the commission of the offense; and, that defendant acted without strong provocation. The court also found that a lesser sentence would deprecate the seriousness of the offense.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La. 1988); State v. Strange, 28,466 (La.App. 2d Cir. 06/26/96), 677 So.2d 587.
It is within the trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ denied, 521 So.2d 1168 (La.1988). Concurrent sentences arising out of a single cause of conduct are not mandatory. State v. Pickett, 628 So.2d 1333 (La.App. 2d Cir. 1993), writ denied, 94-0348 (La. 05/20/94), 637 So.2d 476; State v. Nelson, 467 So.2d 1159 (La.App. 2d Cir.1985). Consecutive sentences under these circumstances are not necessarily excessive. State v. Williams, 445 So.2d 1171 (La.1984); State v. Wilson, 28,403 (La. 08/21/96), 679 So.2d 963; State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied, 508 So.2d 65 (La.1987).
In sentencing defendant, the trial court specifically noted:
In this case, the defendant committed a violent, forcible and random act. (The victim) had never seen the defendant and did not provoke this horrible, unforgettable crime. The defendant shot at (the husband). The defendant has been adjudicated a second felony offender and has displayed no remorse for his violent crime. Under these circumstances, the consecutive nature of these sentences do not render these sentences excessive, cruel or unusual.
Defendant not only possessed a loaded firearm but taunted the victim with it and actually fired the gun at her husband while making his escape. The trial court's decision to impose a 50-year sentence and order it served consecutively is supported by the court's extensive reasons for imposing this particular sentence.
This assignment of error is without merit.

Error Patent Review
Our review has revealed no errors patent.

*195 Conclusion

For the reasons set forth above, we affirm defendant's convictions and sentences.
NOTES
[1] During a subsequent search of defendant's car, police found three lengths of mini-blind cord and a vaginal speculum. The instant charge was originally part of an indictment charging defendant with two other rapes.
[2] Apparently, there were stains on the comforter that were not matched to the victim, her husband or defendant.
[3] Dawn Tingle testified that there were actually two different stains on the bikini bottoms; one stain was determined to be defendant's type and a second stain was a mixture between defendant's type and an unknown.
[4] The discovery response in the record does not contain this crime lab report. Defendant has attached a copy of the crime lab report to his brief.