# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## KA 06-561


**STATE OF LOUISIANA**

**VERSUS**

**AMANDA GUTWEILER**
**AKA AMANDA HYPES**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 265037
HONORABLE DONALD THADDEUS JOHNSON, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


**BILLY HOWARD EZELL**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of Oswald A. Decuir, Marc T. Amy, and Billy Howard Ezell, Judges.


**AFFIRMED.**


**Ellis Paul Adams, Jr.**
**Louisiana District Attorney's Association**
**1645 Nicholson Drive**
**Baton Rouge, LA 70802**
**(225) 343-0171**
**Counsel for Other:**
**District Attorneys of the State of Louisiana**

**James C. Downs**
**District Attorney - Ninth Judicial District Court**
**701 Murray Street**
**Alexandria, LA 71301**
**(318) 473-6650**
**Counsel for Plaintiff/Appellant:**
**State of Louisiana**

**James Michael Small**
**Attorney at Law**
**P. O. Box 1470**
**Alexandria, LA 71309**
**(318) 487-8963**
**Counsel for Defendant/Appellee:**
**Amanda Gutweiler**

**Thomas George Walsh**
**Assistant District Attorney**
**Ninth Judicial District Court**
**P. O. Drawer 1472**
**Alexandria, LA 71309**
**(318) 473-6650**
**Counsel for Plaintiff/Appellant:**
**State of Louisiana**

**EZELL, JUDGE.**

On April 30, 2002, the Rapides Parish Grand Jury indicted Defendant, Amanda M. Gutweiler also known as Amanda Hypes, with three counts of first degree murder, in violation of La.R.S. 14:30. Defendant was accused of murdering her three children by setting fire to the residence they were occupying. Defendant pled not guilty to all charges at her arraignment held on May 3, 2002. After her arraignment, Defendant filed several pre-trial motions, and the district court conducted hearings and ruled on most of them over the next four years.

On February 7, 2006, Defendant filed a "Motion to Compel Disclosure of Information Regarding Grand Jury Proceedings" (motion to compel) with the trial court. In the motion to compel, the defense alleged that the assistant district attorney had confirmed, on February 3, 2006, that he had released grand jury testimony to the State's key forensic witness. Defendant argued that this violated La.Code Crim.P. arts. 431 and 434, and she asked the trial court to compel the State to enumerate, with particularity, the names of all people to whom the prosecution had disclosed grand jury testimony or materials. On February 10, 2006, the prosecution answered Defendant's motion to compel. On February 22, 2006, the district court granted Defendant's motion to compel insofar as to order the State to provide Defendant with a copy of all of the grand jury materials it had given to its expert witness, but it denied all other requested relief.

On March 8, 2006, Defendant filed a "Motion to Quash Indictment and for Other Relief with Incorporated Memorandum of Authorities," (motion to quash) with the trial court. In the motion to quash, the defense argued that the prosecution had violated the laws pertaining to grand jury secrecy. On March 15, 2006, Defendant filed a "Motion for Contradictory Hearing and for Issuance of Subpoenas Instanter

1

for Assistant District Attorneys and Former Assistant District Attorney" (motion for subpoenas). The prosecution responded to Defendant's motion for subpoenas on the same date by filing its "State's Motion to Quash Issuance of Subpoenas for Attorneys-at-Law" and its "Answer with Incorporated Memorandum of Authorities to Defendant's Motion to Quash Indictment and for Other Relief with Incorporated Memorandum of Authorities." The district court conducted a hearing on the motion to quash on March 16, 2006; and at the conclusion of the hearing, the trial court requested the submission of supplemental briefs.

On March 24, 2006, the defense filed "Defendant's Sealed Memorandum in Support of Motion to Quash." On the same date, the prosecution filed a "Motion to Show Compelling Necessity for the Release of Grand Jury Information as Mandated by *In Re: Grand Jury*, 98-2277 (La. 4/13/99)[,] 737 So.2d 1, with Incorporated Authorities" (motion to show necessity). On March 27, 2006, the district court denied the prosecution's motion to show necessity, holding that the motion was untimely filed because it should have been filed prior to the disclosure of the grand jury testimony. The day after the trial court denied the prosecution's motion to show necessity, the defense filed "Defendant's Opposition to State's Motion to Show Compelling Necessity for the Release of Grand Jury Information." On March 30, 2006, the State filed its "State's Brief with Incorporated Memorandum of Authorities in Opposition to Defendant's Motion to Quash Indictment and for Other Relief with Incorporated Memorandum of Authorities" (State's opposition). The trial court granted Defendant's motion to quash on April 6, 2006. Several days later, on April 10, 2006, the district court ordered all pending motions to be continued without date.

The prosecution now appeals the trial court's grant of the motion to quash, incorporating and supplementing the arguments made in the State's opposition. The

2

State filed a request for expedited consideration with its appeal, which this court denied on May 4, 2006.

For the reasons assigned, we affirm the district court's ruling.

## FACTS

These facts were stipulated to in connection with the motion to quash. At the direction of an assistant district attorney, Mr. Thomas Walsh, the State, on April 11, 2002, provided a transcript of Courtney Thomas' November 8, 2001 grand jury testimony to Dr. John DeHaan, an expert employed by the State to investigate the cause and origin of the fire. Mr. Walsh did not first obtain a court order or other judicial authorization prior to ordering the release of Ms. Thomas' grand jury testimony.

On April 25, 2002, Dr. DeHaan testified before the grand jury, and five days later, the grand jury returned an indictment charging Defendant with three counts of first degree murder. The prosecution allowed Dr. DeHaan access to Ms. Thomas' grand jury testimony in order for Dr. DeHaan to obtain a complete understanding of the home's fuel load, the contents of the house, in order to state an opinion of and answer any questions pertaining to the cause and origin of the fire. Dr. DeHaan reviewed Ms. Thomas' grand jury testimony as well as a police statement given by Ms. Thomas concerning the furnishings of the residence prior to giving his own testimony before the grand jury. At the time Dr. DeHaan testified, the grand jury had been convened for approximately six months.

After the indictment in September or October 2005, the prosecution also provided the grand jury transcripts of Dalley, Iris, and Shanna Maynard to Detective Bobby Sandoval,[1] who is the State's lead investigator in the case. Detective Sandoval

---

[1]The joint stipulation refers to Bobby Sandoval as a detective, but the State's brief refers to
(continued...)

was to investigate whether these witnesses had committed perjury. Mr. Walsh did not obtain a court order or other judicial authorization permitting the release of these transcripts to Detective Sandoval.

Upon motion by Defendant, the State also provided copies of Dalley, Iris, and Shanna Maynard's grand jury testimony to Defendant on August 12, 2005 to satisfy *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), obligations; otherwise, the prosecution has not released any other grand jury testimony. The State has not provided Defendant with a copy of Ms. Thomas' grand jury transcript.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. We note that the present appeal, unlike most appeals, was filed by the State rather than Defendant. We find that La.Code Crim.P. art. 920, read literally, requires an error patent review in *all* appeals. Thus, we reviewed the present record for errors patent. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERRORS NUMBERS ONE & TWO

The State argues that the trial court erred in granting the motion to quash. The State also contends that the trial court erred when it excluded Dr. DeHaan and Detective Sandoval from ever testifying in this case or in any future grand jury proceeding or prosecution of Defendant.

DEFENDANT'S ARGUMENT IN FAVOR OF HER MOTION TO QUASH

Defendant moved to quash the indictment based on a violation of grand jury secrecy, which is instituted by La.Const. art. V, § 34 and regulated by La.Code

---

[1](...continued)
him as a Captain, so he was probably promoted at some point prior to the appeal. For consistency, this opinion will refer to him as "Detective Sandoval."

4

Crim.P. arts. 431, 434, 440-41, and *State v. Revere*, 232 La. 184, 94 So.2d 25 (1957). Defendant contends that, although this is not set out by La.Code Crim.P. art. 531, et seq., as a specific ground for quashing the indictment, La.Code Crim.P. art. 531, et seq., is merely illustrative as the Supreme Court has stated that an indictment can be quashed for violation of grand jury secrecy. *United States v. Williams*, 504 U.S. 36, 46, 112 S.Ct. 1735(1992); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369 (1988); *United States v. Mechanik*, 475 U.S. 66, 74, 106 S.Ct. 938, 943 (1986) *State v. Cooper*, 449 So.2d 1376 (La.App. 2 Cir. 1984); *State v. Reaves*, 376 So.2d 136 (La.1979) (stating if the legislature has not specifically provided a method for raising an objection, it is properly brought by motion to quash). Because the accused has the right to have a grand jury conducted in accordance with law, Defendant was not required to demonstrate prejudice in order to have the indictment quashed based on violation of grand jury secrecy. *People v. Minet*, 296 N.Y. 315, 73 N.E.2d 529 (1947). The inconvenience caused by quashing the indictment would be temporary; whereas, the injustice caused by the refusal to quash the indictment would last in perpetuity because it could not be cured by a subsequent fair trial. *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617(1986); *Revere*, 94 So.2d 25. Defendant insisted that quashing the indictment is the only adequate remedy in the instant case.

Defendant maintains that the grand jury's failure to return an indictment before hearing Dr. DeHaan's testimony, which was based in part on Ms. Thomas' grand jury testimony, and that the grand jury's subsequent indictment of Defendant almost immediately after Dr. DeHaan's interview was greatly significant. Defendant points out that, as early as its decision in *State v. Hopkins*, 115 La. 786, 40 So. 166 (1906), the Louisiana Supreme Court had applied the grand jury secrecy rule to the district attorney, the courts, and the defense. The supreme court has consistently applied the

5

grand jury secrecy rule to both the prosecution and the courts since the *Hopkins* decision. *In re Matter Under Investigation Grand Jury No. 1*, 04-672 (La. 5/14/04), 875 So.2d 33 (holding the trial court erred in ordering the transcription of grand jury proceedings so that it could intervene in the operations of the grand jury); *In Re Grand Jury*, 98-2277 (La. 4/13/99), 737 So.2d 1 (maintaining that government attorneys are required to show compelling necessity in order to obtain disclosure of grand jury materials). Defendant urges that the prosecutor's disclosure of grand jury testimony violated a specific duty to protect grand jury secrecy because his disclosure did not fit within the exceptions listed in La.Code Crim.P. art. 434.

In determining whether grand jury materials should be disclosed, the Louisiana Supreme Court has followed the test set out in *United States v. Procter & Gamble Company*, 356 U.S. 677, 78 S.Ct. 983 (1958), which allows the breach of grand jury secrecy only when the party moving for the disclosure limits the request narrowly to the portion needed and shows, with particularity, that there is a compelling necessity outweighing the need for secrecy. *State v. Higgins*, 03-1980 (La. 4/1/05), 898 So.2d 1219, *cert. denied*, ___ U.S. ___, 126 S.Ct. 182 (2005); *State v. Trosclair*, 443 So.2d 1098 (La.1984). In the instant case, the prosecution released the information without first seeking the trial court's permission, thereby violating grand jury secrecy.

Defendant further asserts that, in disclosing the grand jury testimony without following the proper procedure, the prosecutor violated his mandatory duty to conform to the oath of office set out in La.Const. art. X, § 30 by obstructing the grand jury from performing its lawful duties. *State v. Perez*, 464 So.2d 737 (La.1985). Under *State v. Willis*, 05-218 (La.App. 3 Cir. 11/2/05), 915 So.2d 365, *writ denied*, 06-186 (La. 6/23/06), 930 So.2d 973, remedies for prosecutorial misconduct should be tailored to the injuries; therefore, in addition to moving to quash the indictment,

6

Defendant asked the trial court to preclude both witnesses who had received the grand jury materials from ever again testifying in the prosecution of the charged offenses because the witnesses, having studied the materials, could no longer testify as if they had not seen the information.

STATE'S ARGUMENT AGAINST THE MOTION TO QUASH

The State argues that quashing the indictment was inappropriate because the finding of constructive contempt as set out in La.Code Crim.P. art. 434 is the sole remedy for a violation of grand jury secrecy. The prosecution alleges that reliance on *Revere*, which predated the current statutes, was misguided because, when *Revere,* 94 So.2d 25, was decided, defendants had no rights to discovery of exculpatory evidence, there were no legal provisions governing the testimony of an accused before a grand jury, and the conduct complained of in *Revere* falls under La.Code Crim.P. art. 533(3) instead of La.Code Crim.P. art. 434. The State urges that the quashing of the indictment for grand jury related issues should be limited to the grounds set forth in La.Code Crim.P. art. 533.

The State further asserts that it was not in violation of Louisiana's grand jury secrecy provisions. The prosecution claims that it was able to disclose grand jury materials to government personnel and other grand jury witnesses without first obtaining a court order. The State avers that it gave adequate notice of the disclosure by sending a letter to the trial court. The prosecution maintains that the discussions found in *Trosclair,* 443 So.2d 1098*,* and *Higgins*, 898 So.2d 1219, are distinguishable from the current situation because, unlike the instant situation, both *Trosclair* and *Higgins* concern the disclosure of *Brady* materials. The State also distinguishes the discussion found in *Vasquez,* 106 S.Ct. 617*,* from the instant case; *Vasquez* addressed discrimination in the selection of the individual grand jury members. The prosecution

7

alleges that no violation of grand jury secrecy occurred because the materials were only provided to people who had been sworn to secrecy in accordance with La.Code Crim.P. art. 440.[2]

In the event that this court finds that there was a violation of grand jury secrecy, the State suggests that this court apply the federal system by requiring Defendant to show prejudice before the indictment may be dismissed. *Bank of Nova Scotia*, 108 S.Ct. 2369 (stating that the defendant must demonstrate prejudice in order to obtain dismissal of an indictment based on **prosecutorial misconduct**). The Louisiana Supreme Court has recognized that "[t]he policy of maintaining the secrecy of grand jury proceedings has been codified in Rule 6(e) of the Federal Rules of Criminal Procedure." *In Re Grand Jury*, 737 So.2d at 6.

The State argues that the trial court erred in implicitly holding that Dr. DeHaan's use of Ms. Thomas' testimony unduly influenced the jury. The State alleges that Defendant failed to prove prejudice caused by the disclosure to Dr. DeHaan because she did not show that Dr. DeHaan actually used Ms. Thomas' testimony when he presented his own evidence before the grand jury. The prosecution also points out that, in *Mechanik*, 106 S.Ct. 938, the United States Supreme Court refused to quash an indictment for violation of grand jury secrecy when two witnesses testified in tandem before the grand jury. *State v. Walker*, 567 So.2d 581 (La.1990) (providing that a defendant generally has no right to challenge an indictment **for illegality of evidence**; harmless-error analysis is used in determining whether to quash an indictment based on **prosecutorial misconduct** before the grand jury).

---

[2]The prosecutor gave Ms. Thomas' grand jury transcript to Dr. DeHaan a week prior to his own grand jury testimony. The record is unclear as to whether the prosecutor administered the grand jury secrecy oath to Dr. DeHaan prior to giving him the information.

8

The State suggests that this court should interpret the exception found in Fed. R. Crim. P. 6(e), which allows disclosure of grand jury material to non-testifying governmental personnel, as applying to testifying government witnesses and personnel. The State claims that, as the State's chief forensic arson expert, Dr. DeHaan should be entitled to examine all available evidence due to his exemption from sequestration, even though the rules of evidence do not apply to grand jury hearings. La.Code Evid. arts. 615, 702, 1101. The prosecution declares that keeping an expert witness from evaluating previously submitted evidence in preparation for his grand jury testimony would frustrate the true mission of the grand jury as an investigatory body. The State avers that this is especially true when the evidence used is "colorable" because the prosecution would not want the expert to inadvertently mislead the grand jury.[3]

The prosecution asks this court to weigh the damage to its case against the harm done by the disclosure. The State, without giving specifics, argues that its case against Defendant would be greatly prejudiced if Dr. DeHaan was prevented from giving further testimony. In comparison, the disclosure did not actually cause much harm because Dr. DeHaan had already reviewed Ms. Thomas' police statement and the State's case investigation file prior to examining her grand jury testimony.

The prosecution also alleges that its disclosure of the three witnesses' testimony to Detective Sandoval should not be the basis for quashing the indictment or preventing him from giving future testimony. The State provided the transcripts to Detective Sandoval for investigation of perjury suspicions approximately three and a half years after the grand jury returned the indictment. The prosecution contends that the information was provided specifically to Detective Sandoval because he was

---

[3]The State uses "colorable" to refer to information that can be used persuasively by either party to make their arguments.

already the chief investigator in Defendant's case. The State maintains that no harm was done by this disclosure because the testimony contained in those transcripts had previously been provided to Defendant in order to satisfy the State's *Brady* obligations. The prosecution also urges that, once grand jury testimony has been released to the defense under *Brady*, all "colorable" testimony should be made available to be used by the State's experts in creating opinions.

The prosecution adds extra arguments not related to grand jury secrecy. Classifying Dr. DeHaan's use of grand jury materials gained from its unauthorized disclosure as illegal evidence, the State argues that illegal evidence presented before the grand jury is not a basis for quashing the indictment under La.Code Crim.P. arts. 442, 443; *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613 (1974); Fed. R. Crim. P. 6(a).

In conclusion, the prosecution maintains that quashing the indictment was an inappropriate remedy. Instead, the State asked this court to consider alternative remedies: (1) deny Defendant's motion, holding that the prosecution did not violate La.Code Crim.P. art. 434; (2) deny the motion but admonish the State to insure correct action in the future, holding that the defense failed to demonstrate prejudice; (3) deny the motion but order a compelling necessity hearing in accordance with *In Re Grand Jury*; (4) deny the motion but provide the grand jury transcripts to the defense under the principles of equity; or (5) deny the motion and institute constructive contempt proceedings against the responsible State attorney under the provisions of La.Code Crim.P. art. 434.

DEFENDANT'S REBUTTAL

Defendant responds that the State's arguments are illogical and defy justice. Defendant alleges that Louisiana law does not provide an exception to grand jury

10

secrecy for expert witnesses even though, at trial, expert witnesses are exempt from sequestration. Defendant alleges that the grand jury could have fulfilled its function just as well had the prosecution used legal means to obtain the information such as the review of Ms. Thomas' police statement and a personal interview to obtain information missing from the statement.

Defendant replies to the prosecution's contention that its actions fit within an exception listed under Fed. R. Crim. P. 6 by stating that Louisiana never adopted that exception; and, even if Louisiana had adopted the exception, the prosecution's actions still would not have fit the parameters of that exception because neither of the witnesses receiving the grand jury testimony could be classified as "governmental personnel." The defense also points out that, in applying Fed. R. Crim. P. 6, the only notice ever given of the disclosure was a letter sent to the trial court nearly four years after the information had been divulged. Defendant argues that the trial court recognized the inapplicability of Fed. R. Crim. P. 6 when it declined to allow the State to introduce into evidence materials related thereto at the hearing on the motion to quash.

Defendant also answers the prosecution's assertion that the defense should have been made to demonstrate prejudice before the indictment could be quashed. Defendant urges that the test for determining such prejudice is set out in *Bank of Nova Scotia*, 108 S.Ct. 2369, which restricts its application to non-constitutional errors and does not apply to fundamental error cases. Under La.Const. art. V, § 34, the violation of grand jury secrecy is a constitutional defect, which means that a subsequent fair trial cannot cure the taint under Vasquez, 106 S.Ct. 617.

THE TRIAL COURT'S RULING

The district court issued written reasons for granting the motion to quash. In its reasons, the trial court held that La.Code Crim.P. art. 434 only applied to people, who by law or employment duty, are directly associated with the grand jury proceedings and that Dr. DeHaan's status as an expert witness did not qualify him for general access to information from the grand jury proceedings. The district court found that the only difference between the instant case and the scenario discussed in *Mechanik* was that the witness was given a transcript of another witness's testimony rather than being allowed to hear it. The trial court held that, in addition to providing the information the State alleged was necessary for Dr. DeHaan to formulate an opinion, the transcript also allowed Dr. DeHaan, without court approval, "to review a word-for-word soliloquy of what took place in the grand jury proceedings."

The trial court observed that, under *Fund for Constitutional Government v. National Archives and Records Service*, 656 F.2d 856 (D.C.Cir. 1981), the test for determining whether disclosure of information would violate Fed. R. Crim. P. 6(e) depended on whether the revelation would reveal what was before the grand jury. The district court opined that the release of the transcript when other fair and legal options existed violated both the Louisiana Constitution and La.Code Crim.P. art. 434. The trial court agreed with Defendant that the protection of grand jury secrecy in Louisiana is greater than that required by the federal system because Louisiana's grand jury secrecy is constitutionally mandated, because Louisiana did not adopt the exceptions listed in Fed. R. Crim. P. 6, and because, even had the exceptions applied, they would not legitimate the secrecy violation complained of in the instant case.

The trial court pointed out that, even had Fed. R. Crim. P. 6(e) been adopted by Louisiana, it would not apply to the instant situation because Fed. R. Crim. P. 6(e)

12

created an exception for **non-testifying** governmental personnel necessary to assist in performing a government attorney's duty to enforce federal criminal law; whereas, Dr. DeHaan was a **testifying** witness. Moreover, Fed. R. Crim. P. 6(e)(3)(D) requires the governmental attorney to provide notice within a reasonable time after the disclosure was made, which the prosecution did not do in this case because the earliest arguable notice was given to Judge Yeager on February 17, 2006, which was just under four years after the April 11, 2002 disclosure.

The trial court found differences between the disclosure made to Dr. DeHaan and that made to Detective Bobby Sandoval. Whereas, Courtney Thomas' transcript was released to Dr. DeHaan prior to his testimony, the transcripts of Dally, Iris, and Shannon Maynard were released to Detective Sandoval approximately three and a half years after the grand jury indicted Defendant. The purpose of the disclosure to Detective Sandoval was for the investigation of the separate and distinct crime of perjury; whereas, Dr. DeHaan reviewed Ms. Thomas' transcript in reference to the crimes charged in the instant case. The trial court declared that, although La.Code Crim.P. art. 434 allows the disclosure of grand jury testimony for the investigation of perjury, the article only provided for the disclosure when permitted by the court, and the prosecution released the testimony without first obtaining permission of the court.

The trial court next found that, under La.Code Crim.P. art. 434, it was required to find Mr. Walsh in constructive contempt of court, which would require it to set a show cause hearing pending appellate review of its judgment. The district court noted that La.Code Crim.P. art. 533, which provided the grounds for quashing a grand jury indictment, did not specifically encompass the instant scenario. The trial court went on to state that it would have been impossible for the legislature to foresee every

13

possible scenario before enacting the statute, especially the scenario presented herein.

The district court pointed out that Defendant had filed her pleading as a motion to quash under La.Code Crim.P. art. 531. The trial court then held that, under *Mechanik*, 106 S.Ct. 938; *Williams*, 112 S.Ct. 1735; and *Bank of Nova Scotia*, 108 S.Ct. 2369, quashing the indictment was the only remedy available to Defendant to cure the violation of her constitutional right to secret grand jury proceedings. The trial court, noting that it was unsure whether prejudice had occurred, found that it could not require Defendant to demonstrate prejudice in order to obtain relief, especially as this was a capital case. The district court next granted Defendant's request to preclude the State from using the testimony of Dr. DeHaan, Detective Sandoval, and any other witness who had access to the grand jury proceedings in any future grand jury proceeding or prosecution of Defendant. The trial court reasoned that the damage had already been done; Dr. DeHaan and Detective Sandoval had already been influenced by the other testimony.

The district court cited to *Trosclair*, 443 So.2d 1098, for the reasons behind grand jury secrecy and stated that it expected the prosecution to proceed according to law, especially in a case where the State was seeking the death penalty. The trial court explained that the prosecution could have acted within the law by moving the court for permission to release the information or by simply requiring Dr. DeHaan to testify based on his investigation file.

The district court then granted Defendant's motion to quash; excluded Dr. DeHaan and Detective Sandoval from testifying at any future grand jury proceeding or prosecution of Defendant; and ordered that, upon completion of appellate review, the State's attorney responsible for the release of the information would be required

14

to show cause why he should not be held in constructive contempt of court under La.Code Crim.P. art. 434.

**DISCUSSION**

Although both Defendant and the State included arguments discussing what test should be used in determining whether an indictment may be quashed for illegality of evidence and for prosecutorial misconduct before the grand jury, those arguments are irrelevant to the issue at hand. The issue at hand is solely what test should be used in determining whether to quash the indictment based on an alleged breach of grand jury secrecy. Because there are no cases directly on point, we will examine grand jury secrecy in general and several cases with factual scenarios that are analogous to the case before the court.

The United States Supreme Court has examined the issue of grand jury secrecy. In *Procter & Gamble Company*, 78 S.Ct. at 986, the Supreme Court stated that the indispensable secrecy of grand jury proceedings must not be broken without compelling necessity. The compelling necessity must be shown with particularity and outweigh the countervailing policy. *Id*. Preventing delay and cutting costs are not sufficient grounds to pierce grand jury secrecy; the party seeking disclosure must show that, if denied the request, injustice would be done. *Id*.

In *Douglas Oil Company v. Petrol Stops Northwest*, 441 U.S. at 218, 99 S.Ct. at 1672, the Supreme Court stated that the proper functioning of the grand jury depends upon the secrecy of the proceedings. The Supreme Court discussed the reasons why the courts have been reluctant to impinge on grand jury secrecy: (1) it prevents hesitancy by witnesses who, in public proceedings, would be aware that the person under investigation would know the contents of the witnesses' testimony; (2) it aids the witnesses in testifying fully; (3) it prevents retribution and inducements;

15

(4) it prevents flight by those under investigation; (5) it prevents those under investigation from attempting to sway the votes of individual grand jurors; and (6) it protects the reputation of those investigated but not indicted. *Id*. The Supreme Court, however, concluded that, in some situations, discrete, limited portions of transcripts may be made available for use in subsequent proceedings if the party seeking the information shows, with particularity, that there would be great prejudice without the information, that injustice would occur, that the need for disclosure is greater than the need for secrecy, and that the request is tailored to cover only the necessary materials. *Id*. This showing is required even after the conclusion of the grand jury proceedings. *Id*. Courts are bound to weigh the competing interests of preserving grand jury secrecy and of preventing injustice in light of relevant circumstances. *Id*.

In *Mechanik*, 106 S.Ct. 938, the Supreme Court upheld a defendant's conviction where two grand jury witnesses were allowed to testify in tandem; however, the court explained that the witnesses had each given exactly the same testimony separately in a prior grand jury investigation. Justice O'Connor concurred and explained that, much like a situation wherein the prosecution remained in the grand jury room during deliberations, the government would have been in violation of grand jury secrecy provisions if all witnesses had been present in the room while the others testified in order to keep the testimony consistent. *Id*. Justice O'Connor declared that, in such a situation, the prosecution would have hindered the grand jury's duty to uncover the truth. *Id*. Under the Federal Rules of Criminal Procedure, courts have consistently quashed indictments in instances where the grand jury's independence may have been imperiled; however, because a harmless error analysis is used in the federal system, the party seeking the dismissal must clearly establish the

16

violation, must prove with particularity the irregularities in the grand jury process, and must show impairment of substantial rights of the accused. *Id.*

In another opinion rendered the same year as *Mechanik*, the Supreme Court addressed the petitioner's request for a harmless error analysis where the trial court discriminated in selecting grand jurors and held that a harmless-error analysis was not always appropriate for some grand jury issues because a subsequent fair trial would not necessarily cure grand jury defects:

> The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense–all on the basis of the same facts. Moreover, "[t]he grand jury is not bound to indict in every case where a conviction can be obtained." *United States v. Ciambrone*, 601 F.2d 616, 629 (CA2 1979) (Friendly, J., dissenting). Thus, even if a grand jury's determination of probable cause is confirmed in hindsight by a conviction on the indicted offense, that confirmation in no way suggests that the discrimination did not impermissibly infect the framing of the indictment and, consequently, the nature or very existence of the proceedings to come.

> When constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm. . . . [D]iscrimination in the grand jury undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review.

> . . . The overriding imperative to eliminate this systemic flaw in the charging process, as well as the difficulty assessing its effect on any given defendant, requires our continued adherence to a rule of mandatory reversal.

*Vasquez*, 106 S.Ct. at 623-24 (alteration in original) (footnote omitted).

The Louisiana Constitution states that the secrecy of grand jury proceedings shall be provided by law. La.Const. art. V, §34. In accordance with the constitution, the Louisiana Code of Criminal Procedure provides grand jury secrecy requirements. La.Code Crim.P. arts. 431, et seq. Grand jurors are required to pledge to keep secret

their own counsel, that of their fellow grand jury members, and that of the State. La.Code Crim.P. art. 431. Grand jurors are also required to promise that, unless authorized by law, they will not disclose the testimony of any witness examined before the grand jury, any statements made by fellow grand jury members, or any vote made by the individual members. *Id.* The rules of grand jury secrecy also apply to prosecutors. *In Re Grand Jury*, 737 So.2d 1; *State v. Hopkins*, 40 So. 166; *State v. Richard*, 59 La. Ann. 210, 23 So. 331 (1898). Grand jury witnesses, persons involved in the recording or transcribing of the proceedings, and interpreters also must vow secrecy.[4]

Louisiana Code of Criminal Procedure Article 433 limits the attendance at grand jury sessions to the prosecutor(s),[5] the witness under examination, the person sworn to record the proceedings of and the testimony given before the grand jury, and a language interpreter sworn to translate the testimony of a witness who is unable to speak English. Additionally, targets of the grand jury's investigation are allowed the presence of counsel during grand jury sessions. La.Code Crim.P. art. 433(A)(2). However, attendance at grand jury deliberations is limited to the grand jurors themselves. La.Code Crim.P. art. 433(B). Any unauthorized person who intentionally attends a meeting of the grand jury shall be in constructive contempt of court. La.Code Crim.P. art. 433(C).

---

[4]"A witness who is to testify before the grand jury shall first be sworn by the foreman, in accordance with Article 14, to testify truthfully and to keep secret, except as authorized by law, matters which he learns at the grand jury meeting." La.Code Crim.P. art. 440.

"Before being permitted to function in their respective capacities, the court shall administer an oath, to persons employed to record and transcribe the testimony and proceedings, and to interpreters, to faithfully perform their duties and keep secret the grand jury proceedings." La.Code Crim.P. art 441.

[5]The district attorney is the representative of the state before the grand jury and is its legal advisor. He shall be notified of and has the right to be present at all sessions of the grand jury, except while it is deliberating and voting. He shall examine witnesses before the grand jury. La.Code Crim.P. art. 64.

The Official Revision Comment to La.Code Crim.P. art. 433 gives some guidance on the legislature's intention for grand jury secrecy. It states that some of the more important reasons for grand jury secrecy are:

> (1) to prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation.

*See also*, *Trosclair*, 443 So.2d 1098. Although the legislature did not include a specific provision holding the indictment subject to a motion to quash for the intentional presence of an unauthorized person at a grand jury meeting, it specifically stated that the article did not change the *Revere,* 94 So.2d 25, rule (discussed below), but rather stated that "neither the Revere rule nor the contempt provision of Paragraph C should apply if an unauthorized person inadvertently enters the grand jury room and is promptly removed." Official Revision Comment(d) for La.Code Crim.P. art. 433.

Louisiana Code of Criminal Procedure Article 434 (emphasis added) provides the specifics of grand jury secrecy:,

> A. Members of the grand jury, **all other persons present at a grand jury meeting, and all persons having confidential access to information concerning grand jury proceedings, shall keep secret the testimony of witnesses and all other matters occurring at, or directly connected with, a meeting of the grand jury**. However, after the indictment, such persons may reveal statutory irregularities in grand jury proceedings to defense counsel, the attorney general, the district attorney, or the court, and may testify concerning them. Such persons may disclose testimony given before the grand jury, at any time when permitted by the court, to show that a witness committed perjury in his testimony before the grand jury. A witness may discuss his testimony given before the grand jury with counsel for a person under

19

investigation or indicted, with the attorney general or the district attorney, or with the court.

. . . .

C. Any person who violates the provisions of this article shall be in constructive contempt of court.

The Revision Comment clarifies that the secrecy obligation extends to and encompasses the district attorney and his assistants. Revision Comment(b) to La.Code Crim.P. art. 434. The comment goes on to state that "[t]he secrecy required of a witness appearing before the grand jury does not preclude the witness from discussing his knowledge of the facts of a case" and "the article expressly permits the witness to discuss his testimony given before the grand jury with those having a legitimate interest in that testimony." Witness secrecy is designed to prevent grand jury witnesses "from disclosing matters which [they learn] by being present at the grand jury meeting, such as (1) what offenses are under investigation, (2) which persons are under investigation, and (3) the names of persons who have been, or will be, called to testify." *Id*. It falls to the district attorney or the court to explain the grand jury secrecy requirement to persons who are involved in the proceedings but not required to take the oath of secrecy. Revision Comment(c) to La.Code Crim.P. art. 434.

Also preserving grand jury secrecy, Louisiana Revised Statutes prevents grand jurors and the district attorney from disclosing information subject to grand jury secrecy:

No grand juror or district attorney is competent to testify as to anything that took place before the grand jury during its sessions, or to testify upon what evidence any indictment was found, or that it was found upon insufficient evidence, or without evidence; but the grand jurors and the district attorney are competent witnesses both for the state and for the defense in any prosecution for perjury or false swearing,

20

alleged to have been committed before the grand jury, and as authorized by Louisiana Code of Evidence Article 606.[6]

La.R.S. 15:471.

All defenses raised before trial, except mental capacity, shall be raised by motion to quash. La.Code Crim.P. art. 531; *Reaves*, 376 So.2d at 136; *State v. Cooper*, 449 So.2d at 1376 (holding that the list of grounds for a motion to quash found in La.Code Crim.P. arts. 532 and 534 are merely illustrative). Louisiana Code of Criminal Procedure Articles 532-34 set out the grounds for quashing an indictment, but La.Code Crim.P. art. 533 lists the reasons for quashing an indictment for errors relating to the grand jury:

A motion to quash an indictment by a grand jury may also be based on one or more of the following grounds:

(1) The manner of selection of the general venire, the grand jury venire, or the grand jury was illegal.

(2) An individual grand juror was not qualified under Article 401.

(3) A person, other than a grand juror, was present while the grand jurors were deliberating or voting, or an unauthorized person was present when the grand jury was examining a witness.

(4) Less than nine grand jurors were present when the indictment was found.

(5) The indictment was not indorsed "a true bill," or the endorsement was not signed by the foreman of the grand jury.

In the Revision Comments to La.Code Crim.P. art. 533, the legislature explained:

In State v. Kifer, 186 La. 674, 173 So. 169 (1937), a rape conviction was set aside on the ground that the district attorney was present during the deliberations of the grand jury. The supreme court was not concerned with a specific showing of how the district attorneys' presence prejudiced the defendant, but simply stated: "The reason for this rule is that if the district attorney or any one else should be permitted to be present during the deliberations of a grand jury, the vote of members of

_____

[6]Discussing the disqualification of jurors as witnesses.

the grand jurors [jury] might be influenced by his presence, . . . ." *Id*. at 688, 173 So. at 173. The jurisprudence likewise holds an indictment invalid if any unnecessary person was present while the grand jury was examining witnesses. In People v. Minet, 296 N.Y. 315, 73 N.E.2d 529 (1947), two witnesses were called into the grand jury room together and testified in the presence of each other. In State v. Revere, 232 La. 184, 94 So.2d 25 (1957), an investigator from the district attorney's office attended the grand jury session for the purpose of monitoring a soundscribing machine, which was recording the testimony of the witnesses. The court rejected the state's argument that the investigator was present in the capacity of a stenographer as contemplated by former R.S. 15:215, and concluded that "if the secrecy requirement is regarded lightly it may foster the very practices which the grand jury functions to avoid." *Id*. at 198, 94 So.2d at 30. The persons authorized to be present when witnesses are examined by the grand jury are specified in Title II, District Attorney and Attorney General, and Title XII, The Grand Jury.

As discussed above, the Louisiana legislature considered *Minet*, 73 N.E.2d 529, pertinent to understanding when an indictment should be quashed for defects in the grand jury.

In *Minet*, the district attorney, after consulting the members of the grand jury, allowed an older sibling to accompany an underage witness who was nervous about testifying; the older sibling was also a witness. *Id*. An indictment was found against the defendant, and a motion to quash the indictment based on the sibling's presence followed. No specific provision of New York law prohibited the simultaneous presence of two witnesses in the grand jury room. However, the *Minet* court held that New York grand juries had no power to authorize the presence of more than one witness at a time at grand jury proceedings; its ruling was based on the lack of jurisprudence on the issue along with common law history and the then-proposed Section 133 of the American Law Institute Code of Criminal Procedure restricting the number of witnesses at a grand jury hearing to one at a time.

The *Minet* court then decreed that "an indictment should be dismissed when two witnesses have been presented together while the testimony of one or both was heard by the grand jury and that the decision should not be" based on a harmless error

22

analysis. *Id*. at 532. Any number of physical signals, prior statements, or previously stated opinions made by one witness and heard or observed by the second witness might affect the free testimony of the second due to a reticence to publicly disagree with the first; these signals or the silent conformation of the witness who would have otherwise testified differently would not be evident from the record. *Id*. at 322, 532. Furthermore, allowing the presence of co-witnesses during grand jury testimony would defeat the secrecy that is a vital requisite of grand jury procedure because, as a witness is not bound to keep secret his own testimony, the witness would also be able to divulge without restraint the overheard testimony of his co-witnesses. *Id*.

Under the *Minet* reasoning, the indictment should also be quashed in this case. Similar to having multiple witnesses present at the same time in the grand jury room, Dr. DeHaan was under no obligation to keep Ms. Thomas' testimony secret once he was given Ms. Thomas' grand jury transcript. Also, Ms. Thomas' testimony was provided to Dr. DeHaan prior to his testimony before the grand jury and his report lists that testimony as a source, which indicates that, however negligible, her testimony had some impact on his own grand jury testimony.

In *Revere*, 94 So.2d 25, the Louisiana Supreme Court also examined whether an indictment should automatically be quashed for the presence of an unauthorized person in the grand jury room or whether a harmless-error analysis should be implemented. The unauthorized person swore the oath of secrecy, attended the grand jury proceedings to operate and monitor the machine recording the testimony, and later transcribed the grand jury testimony. *Id*. At the time, the law provided for the presence of a stenographer but not for the attendance of a machine operator or monitor. *Id*. After examining the purpose and history behind grand jury secrecy, the supreme court held that the defendant's right to have a grand jury proceeding

23

impaneled and conducted according to law should be rigorously protected because neither the defendant nor his attorney, as a general rule, were permitted to know the matters occurring in the grand jury hearings. *Id*.

The *Revere* court reasoned that "the mere presence of an unauthorized person in the grand jury room [was] violative of a substantial right of the citizen and [could not] . . . be abridged through the subterfuge of shifting to that citizen the burden of proving [that] such an invasion . . . was prejudicial." *Id*. at 32-33. Because the legislature had not specified a harmless error analysis in the situation presented and because it would be nearly impossible for the defendant to show influence or prejudice even upon examination of the minutes, approval of the harmless-error analysis would open the door to grave abuses and jeopardize the safeguards set up by the institution of the grand jury. *Id*. The courts must not only guard against actual prejudice but also must guard against any opportunity that would make it possible to exert prejudice and influence over the grand jury. *Id*. "The inconvenience of resubmitting the matter to the grand jury [would be] temporary;" whereas, the injustice caused through the violation of the defendant's right to have the grand jury proceedings conducted in accordance with law would be perpetual. *Id*. As a substantial violation of the defendant's right, the supreme court affirmed the trial court's grant of Revere's motion to quash. *Id*. at 34.

Thus, also under the reasoning found in *Revere*, the trial court appropriately granted Defendant's motion to quash the indictment. There is a possibility both that Ms. Thomas' testimony had an impact on Dr. DeHaan's report and that Dr. DeHaan used the information to influence the grand jury members because they returned an indictment against Defendant after hearing Dr. DeHaan's testimony. The possibility is much greater in the instant case than in the *Revere* case because Dr. DeHaan was

exposed to another witness's testimony rather than the mere presence of a neutral party. Such possibilities for abuse should be guarded against because Defendant has a substantial right to grand jury proceedings conducted in accordance with law.

The supreme court has explained that one of the reasons a grand jury indictment may not be challenged on the basis of illegal evidence is because "a review of the evidence considered by the grand jury would destroy the veil of secrecy with which the law surrounds both the proceedings and the testimony presented to the grand jury." *State v. Hudson*, 253 La. 992, 221 So.2d 484, 496 (1969), *cert. granted and reversed on other grounds*, 91 S.Ct. 2282 (1971).

In the opposite situation, the defendant objected when the prosecution sought to use grand jury testimony to impeach a witness; similarly, the district court sustained the objection. *State v. Terrebonne*, 256 La. 385, 236 So.2d 773 (1970). The supreme court affirmed the trial court's ruling.

> To permit a violation of grand jury secrecy for the purposes advanced here would run counter to the strongest policy consideration supporting grand jury secrecy: "to encourage the free disclosure of information relative to [the] crime." And it will not do to argue, as the State does, that the obligation of secrecy is no longer of importance when the indictment has been found, the indicted accused is in custody and the grand jury is finally discharged.

> For the law's concern is with the grand jury as a permanent institution and the policy considerations mentioned are to be served on a long term basis, not simply during the life of each grand jury. Thus we cannot understand how secrecy can promote the policy "to encourage the free disclosure of information relative to [the] crime" if, upon discharge of the jury, the obligation of secrecy no longer obtains. Such a system would, in the eyes of any astute observer, render the proferred [sic] protection of secrecy a sham, and the temporary character of the veil of secrecy would, instead, do everything to *discourage* the free disclosure of information relative to the crime at all subsequent grand jury sessions.

> The view we have adopted does nothing to encourage witnesses to perjure themselves either in the grand jury session or at the subsequent trial as the argument suggests. To the contrary, false swearing remains punishable as perjury, and the record of the grand jury

testimony, under the exception announced in Article 434, may be produced on the witness' trial for perjury, not otherwise. Any extension of the exceptions to secrecy announced in Article 434 would, in our opinion, immeasurably weaken the effectiveness of the grand jury as an inquisitorial body; for it was never intended that witnesses who honestly err in their testimony before the grand jury, and who later discover the error and correct it in their testimony at the trial, should have their testimony impeached.

As this Court declared in State v. Revere, the secrecy of the grand jury must serve to protect the jurors, the witnesses, the State, the accused and society as a whole. It is inevitable that in fulfilling this rule the requirements of secrecy must come in conflict with one or more of the many demands of the law. In the face of these conflicts, the tradition of the law requires that secrecy must prevail, unless it be dispensed with by a clear and specific legislative mandate.

*Id*. at 776-77 (emphasis in original).

In *Trosclair*, 443 So.2d 1098, the supreme court discussed exceptions to the grand jury secrecy rule and the appropriate method for obtaining disclosure of grand jury materials not included in those exceptions. The *Trosclair* court recognized three exceptions to grand jury secrecy: (1) after the indictment, persons present at the grand jury proceedings may reveal statutory irregularities to defense counsel, the attorney general, the district attorney, or the court; (2) a court may direct disclosure of grand jury testimony to show that the witness committed perjury; and (3) without first seeking the court's permission, both the prosecution and defense counsel are allowed access to witnesses for discussion of their grand jury testimony. In determining whether to reveal information not falling within those exceptions, the district court must balance the strong public policy in favor of maintaining grand jury secrecy with the need for openness in discovery. *Id*. The party seeking disclosure must show that there is a compelling necessity for the disclosure; without the information requested, the party's case would be greatly prejudiced and that injustice would occur. *Id.* The need must be shown with particularity and the request limited to those portions of the proceedings actually needed. *Id*. In the instant case, the prosecution failed to follow

26

this procedure before disclosing the information to either Dr. DeHaan or Detective Sandoval.

Another supreme court case discussed whether a prosecutor may, without first seeking authorization, disclose information to federal prosecutors. *In Re Grand Jury*, 737 So.2d 1. In 1993, a grand jury convened in East Baton Rouge Parish to investigate Edwin and Stephen Edwards in relation to the licensing process for riverboat gaming operators in Louisiana but did not return an indictment. Four years later, a federal prosecutor sent a letter to the East Baton Rouge Parish District Attorney seeking the transcripts of those hearings. Without conducting a hearing, the duty judge for the Nineteenth Judicial District Court signed an order releasing the materials. In reviewing the decision, the supreme court took the opportunity to re-examine the law and federal jurisprudence pertaining to grand jury secrecy.

After examining prior decisions, the supreme court discussed the exceptions to the general prohibition from revealing grand jury information: (1) after the indictment, the grand jury members can notify the defense counsel, attorney general, district attorney, or court of statutory irregularities in the proceedings; (2) when permitted by the court, persons present at the grand jury hearings can reveal testimony to show that a witness committed perjury; (3) a witness may discuss his grand jury testimony with the defense counsel, attorney general, district attorney, or the court; (4) after notifying his district attorney, the grand jury foreman may alert the attorney general to a crime that may have been committed in another parish in the State, and the district attorney or attorney general may forward the relevant evidence to the district attorney of the other parish.[7] *Id*. Outside of those express exceptions, the

---

[7]Louisiana courts have also recognized that *Brady* grand jury materials may be released to the defendant following an *in camera* inspection and determination by the court. *State v. Poland*, 00-453,(La. 3/16/01), 782 So.2d 556, *State v. Williams*, 98-1947 (La.App. 4 Cir. 8/23/00) 769 So.2d (continued...)

27

party seeking disclosure of grand jury materials must prove at a contradictory hearing that a particularized compelling necessity, i.e. great prejudice to the party's case, exists for the disclosure. *Id.*; *Pettibone v. Belt*, 02-1316, (La.App. 3 Cir. 4/30/03), 843 So.2d 1265. The supreme court concluded that, because the federal prosecutor would have had to follow procedure by demonstrating a particularized compelling necessity at a contradictory hearing in order to legally obtain the grand jury materials and because the United States Attorney failed to follow the designated procedure, the release of the grand jury materials to the federal prosecutor was improper. *In Re Grand Jury*, 737 So.2d 1.

The supreme court still maintains that:

> The party seeking disclosure bears the burden to show a compelling necessity for breaking the indispensable secrecy of grand jury proceedings. He must show that, without the material, his case would be greatly prejudiced or that an injustice would be done. If allowed, disclosure "must be closely confined to the limited portion of the material for which there is particularized need." In any event, disclosure is left to the sound discretion of the trial court whose ruling will not reversed absent an abuse of that discretion.

*Higgins*, 898 So.2d at 1241 (citations omitted).

None of the law or jurisprudence examined indicates that Louisiana has adopted all of the exceptions set out in the Federal Rules of Criminal Procedure. In 1999, the supreme court expressly listed the exceptions to grand jury secrecy and disclosure to the State's expert witness was not listed among them; also, under both La.Code Crim.P. art. 434 and the supreme court jurisprudence, persons admitted to the grand jury hearings may only disclose testimony for the purposes of proving perjury **after that person has been given permission by the court**. *In Re Grand Jury*, 737 So.2d 1.

---

[7](...continued)
629.

28

The second circuit has held that "[a] general claim that disclosure of grand jury testimony would reveal evidence of perjury [or prior inconsistent statements] is insufficient to satisfy the requirement of a showing of particularized need." *State v. Small*, 29,137, p. 9 (La.App. 2 Cir. 4/2/97), 693 So.2d 180, 188 (*citing State v. Evans*, 27,750 (La.App. 2 Cir. 2/28/96), 669 So.2d 719, *writ denied*, 96-793 (La. 6/28/96), 675 So.2d 1119); *State v. Corley*, 97-235, (La.App. 3 Cir. 10/8/97), 703 So.2d 653, *writ denied*, 97-2845 (La. 3/13/98), 712 So.2d 875. Instead, the trial court has been authorized to conduct an *in camera* inspection of the grand jury transcripts in order to determine whether conflicting statements have been made. *Small*, 693 So.2d 180. The State did not follow proper procedure in seeking release of the grand jury testimony so that it could prove perjury. Under *Small* and La.Code Crim.P. art. 434, even had the prosecutor followed the proper procedure, the district court may not have found a particularized need for disclosing the testimony of three witnesses to Detective Sandoval because the information was given to him so that he could investigate whether those witnesses committed perjury.

The officials entitled to be present at grand jury sessions and therefore privy to the grand jury testimony are the district attorney, assistant district attorneys, attorney general, and assistant attorneys general. La.Code Crim.P. art 433. "Unless the context clearly indicates the contrary, official titles, such as clerk of court, coroner, district attorney, and sheriff, include assistants and deputies." La.Code Crim.P. art. 8. Because the State's expert witness and the chief investigator for the case are not officially acting as either assistants or deputies to the district attorney, assistant district attorneys, attorney general, or assistant attorney generals; neither the State's expert witness nor its lead investigator for the case are among those people privy to grand jury testimony by merit of their presence at those hearings. Therefore,

29

the prosecutor violated grand jury secrecy by divulging the information to Dr. DeHaan and Detective Sandoval without first following the proper procedure. Moreover, the trial court properly quashed the indictment under *Revere*, 94 So.2d 25, and the Louisiana-adopted case, *Minet*, 73 N.E. 2d 529.

As to whether Dr. DeHaan and Detective Sandoval should be prohibited from testifying in any future proceeding in the prosecution of Defendant, the law and jurisprudence is not clear. We were unable to find any specific case where the trial court had issued this ruling, and neither the State nor Defendant cited any relevant law. However, "[w]here no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions." La.Code Crim.P. art. 3. Also:

> A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction. It has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done. A court has the power to punish for contempt.

La.Code Crim.P. art. 17. Therefore, if the only way to ensure that justice is done is to keep Dr. DeHaan and Detective Sandoval from testifying in any future criminal proceedings relating to the prosecution of Defendant, then the district court was acting well within its authority when it issued the prohibition.

The trial court correctly pointed out that both Dr. DeHaan and Detective Sandoval have seen the prohibited information and they cannot testify as if their viewing the material had not happened. The prosecutor would not be able to cure the error at this point by independently obtaining all of the disclosed information by interviewing the witnesses and then dispensing the information to Dr. DeHaan and

30

Detective Sandoval. The substantial lapse of time since the original grand jury hearings makes the four witnesses' ability to remember the substance of their testimony, much less a verbatim account, highly improbable. Notably, the district court did not prohibit Dr. DeHaan from turning over his case file, minus the grand jury transcript and any reference thereto, to a colleague with similar experience. Likewise, the trial court also did not prohibit another investigator from reviewing Detective Sandoval's files and notes pertaining to the investigation without the grand jury transcripts or any reference thereto. Although inconvenient for the prosecution, the district court's ruling did not actually destroy the effectiveness of the State's case.

Even though the rules of evidence do not apply to grand jury proceedings, the sanctions provision of La.Code Evid. art. 615, which redresses violation of witness sequestration at trial, may be helpful in determining whether the witnesses were appropriately excluded from further prosecution proceedings as a sanction for the violation of grand jury secrecy: "A court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when such sanctions are insufficient, disqualification of the witness."

Pending completion of appellate review, the prosecutor responsible for the secrecy violation has been ordered to show cause why he should not be held in constructive contempt of court pursuant to La.Code Crim.P. art. 434. However, the contempt proceedings against the prosecutor will not erase the witnesses' knowledge of prohibited information. As there is no proof that witnesses themselves divulged prohibited material, contempt proceedings against the witnesses is not an appropriate solution. Likewise, special jury instructions also could not cure the taint caused by the witnesses' examination of the prohibited information because the jury would not

31

be able to determine what parts of the witnesses' testimonies had been influenced by the grand jury materials without first reviewing the secret transcripts themselves.

Thus, under these circumstance, the only effective sanction listed in La.Code Evid. art. 615 is disqualification:

> (f) Disqualification, is the most drastic remedy. It precludes a party from adducing perhaps vital evidence and deprives the jury of the benefit of the witness' testimony. When a party has had no knowledge of the violation and has played no role in bringing it about, disqualification unjustly impairs his case. In a criminal case, the exclusion of a defense witness may violate the defendant's right to call witnesses on his behalf. The Louisiana Supreme Court [has] stated, . . . "Excluding the witness's testimony, in the absence of a sequestration violation with the consent or knowledge of the defendant or his counsel, is not a constitutionally permissible means of insuring reliable testimony." Federal courts have adopted a similar view. Federal courts have provided collateral relief and reversed convictions where defense witnesses were excluded.

1988 Official Revision Comment to La.Code Evid. art. 615(citations omitted). "The Louisiana Supreme Court, while recognizing that disqualification is a drastic remedy, specifically approves the measure, however, when the sequestration violation was committed with the consent, connivance, procurement or knowledge of the party calling the witnesses." *Briscoe v. Briscoe*, 25,955, p. 6 (La.App. 2 Cir. 8/17/94), 641 So.2d 999, 1005. Because the prosecutor actively caused the violation, excluding the witnesses would not infringe upon the State's right to prosecute Defendant.

Thus, because other remedies would not cure the harm done to Defendant and because the inconvenience the exclusion causes the prosecution does not outweigh that harm, the trial court did not err in excluding Dr. DeHaan and Detective Sandoval from testifying at future proceedings relevant to the prosecution of Defendant.

The State's assignment of errors is without merit.

The Louisiana District Attorneys Association argues that the discussion of grand jury testimony with investigating officers and expert witnesses is essential to both the investigative and accusatory functions of the grand jury. It states that such persons are engaged in a collective effort to investigate and prosecute the case and are, therefore, clearly "persons having confidential access to information concerning grand jury proceedings" under La.Code Crim.P. art. 434. The Louisiana District Attorneys Association provides no support for its statement. Nothing in the grand jury articles allows the free disclosure of other witnesses' grand jury testimony to the prosecution's expert witnesses and investigators. La.Code Crim.P. arts. 431, et seq. Most logically, "[A]ll persons having confidential access to information concerning grand jury proceedings" would apply only to those people involved in the peripheral functioning of the grand jury, such as any officer guarding the door to the grand jury room or anyone else who may observe and recognize the grand jury witnesses as they enter and exit, a transcriber who may not have been involved in the actual recording of the testimony, or the trial judge who performs an *in camera* inspection of the testimony for signs of perjury or *Brady* evidence. La.Code Crim.P. art. 434(A).

The Louisiana District Attorneys Association propounds that, as the target of the investigation is allowed the presence of counsel during his testimony, the investigated party's attorney should also be allowed to share grand jury information with co-counsel, defense investigators, and defense experts. This argument purports to be equitable; however, it only allows the defense to share the defendant's testimony; whereas, the Louisiana District Attorneys Association is seeking full disclosure of ALL grand jury materials for prosecutors. Furthermore, if the parties follow the proper procedure, all of the information given by all witnesses is already

available to both the prosecution and the defense because neither party is prohibited from independently questioning any grand jury witness in order to legitimately obtain the information the witness gave to the grand jury. La.Code Crim.P. art. 434. The Supreme Court has specifically ruled out convenience as a valid reason for disclosing grand jury materials. *Procter & Gamble Co.*, 78 S.Ct. at 983.

Next, the Louisiana District Attorneys Association asserts that, because the district attorney represents the State before the grand jury under La.Code Crim.P. art. 64, all of its investigators, experts, and fellow prosecutors should be privy to the information as members of "the State." The Louisiana District Attorneys Association contends that there is no need for court authorization for such a disclosure because the district attorney is allowed to direct any and all evidence, transcripts, and testimony of any crime that may have happened in another parish to the district attorney of that parish under La.Code Crim.P. art. 434(B) (emphasis added).

The Louisiana District Attorneys Association ignores the first part of La.Code Crim.P. art. 434(B), which states, "[w]henever a grand jury of one parish discovers that a crime may have been committed in another parish of the state, **the foreman of that grand jury, after notifying his district attorney, shall make that discovery known to the attorney general**." Thus, contrary to the Louisiana District Attorneys Association's view, the article does not allow uncontrolled sharing of information between prosecutors of differing jurisdictions because such a sharing of information is limited to the particular circumstances and must be initiated by the grand jury itself. La.Code Crim.P. art. 434(B). The information sharing is limited to the attorney general, his assistants and deputies, the district attorney of the other parish, and his assistants and deputies. La.Code Crim.P. arts. 8, 434(B). This does not include the prosecution's witnesses. Also, Louisiana courts have long held that grand jury

34

secrecy restrictions apply to prosecutors as well as defendants and, in order to obtain disclosure of grand jury materials in situations not falling under section B of La.Code Crim.P. art. 434, the party seeking the disclosure must first obtain permission from the court. *Higgins*, 898 So.2d at 1219; *In Re Grand Jury*, 737 So.2d 1; *Hopkins*, 40 So. 166; *Richard*, 23 So. 331.

The Louisiana District Attorneys Association is, in effect, asking this court to waive grand jury secrecy for all prosecutors, allowing those prosecutors to reveal grand jury materials to anyone they feel can use the information to further the State's case. As Louisiana courts have long maintained that grand jury secrecy applies to the prosecution, the Louisiana District Attorneys Association's arguments are without merit.

## CONCLUSION

This court affirms the district court's ruling.

**AFFIRMED.**